Scott BEAVER, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–02–00382–CR.

Court of Appeals of Texas, Houston (1st Dist.).

April 3, 2003.

Jim M. Medley, Houston, TX, for Appellant.

Dan McCrory, Assistant District Attorney, Charles A. Rosenthal, Jr., District Attorney–Harris County, Houston, TX, for Appellee.

Panel consists of Chief Justice RADACK and Justices NUCHIA and HANKS.

## OPINION

SHERRY RADACK, Chief Justice.

Appellant, Scott Beaver, pleaded guilty to possession of marihuana after his pretrial motion to suppress evidence was denied. Appellant was sentenced by the trial court to 180 days' confinement. In a single point of error, appellant argues the trial court erred in denying his motion to suppress evidence.

We affirm.

## Facts

On December 22, 2000, Houston Police Officer Dutch Lane set up a surveillance of appellant's apartment for the purpose of investigating alleged marihuana sales. After watching the apartment for about five minutes, Lane observed a truck stopping at the apartment. Lane testified that he went up the stairs and knocked on the apartment door while two other Houston Police Officers waited at the bottom of the stairs. Appellant answered the door, and, as Lane asked him if anyone else was inside, another man, Robert Porter, appeared behind appellant and announced his presence. Lane testified that, as he was standing in the doorway, he could smell burnt marihuana and he could see a device known as a "water pipe," a device used to smoke marihuana, on top of the refrigerator.

Lane told appellant and Porter to go down the stairs with one of the other police officers. While Lane was still in the doorway, he saw a hand-rolled cigarette on top of the coffee table that he believed was the source of the burnt marihuana odor. Lane did not have a warrant to enter the apartment, but he testified that, not knowing if anyone was in the apartment, he entered it to make a sweep.[1] While Lane was inside the apartment during the initial entry, he found two potato chips cans, one containing marihuana seeds, and the other containing partially smoked marihuana cigarettes. Lane also found marihuana residue on a weight scale in the closet, marihuana wrapped in plastic that was within brown paper bags, and marihuana in a drawer that Lane opened.[2]

---

1. Lane referred to his sweep as a protective sweep, but he also expressed concern anyone still inside of the apartment could quickly destroy the marihuana inside by flushing it down the toilet.

2. It is not clear what Lane's primary purpose was in opening the drawer. The following dialogue took place at the hearing on appellant's motion to suppress:

Lane testified that, after the initial entry, he obtained the verbal consent of appellant to search the apartment, and, after a second search, he found small plastic boxes containing marihuana and marihuana seeds, photographs of marihuana being grown in various places, a handgun underneath the mattress, and some marihuana that was in a jar in the kitchen.

The record indicates that appellant was outside of the apartment while Lane was conducting his searches. Appellant testified that, at the time the written consent was obtained, he was already in handcuffs in the patrol car.

Lane obtained appellant's written consent to search the apartment and a van outside of the apartment after his second entry into the apartment. Lane testified that he started to "collect the evidence" after his initial sweep, but upon further questioning, he stated that it was after obtaining consent and after making a second entry that he "got the [evidence] I already [sic] seen in the protective sweep." All of the searches conducted by the officers were performed without a warrant.

## Standard of Review

Generally, a trial court's ruling on a motion to suppress is reviewed for an abuse of discretion. *Oles v. State*, 993 S.W.2d 103, 106 (Tex.Crim.App.1999). Determinations of probable cause should be reviewed de novo on appeal. *Guzman v. State*, 955 S.W.2d 85, 87 (Tex.Crim.App. 1997) (citing *Ornelas v. United States*, 517 U.S. 690, 699, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911 (1996)). If the issue involves the credibility of a witness, such that the demeanor of the witness is important, then greater deference will be given to the trial court's ruling on that issue. *Id.* The amount of deference that a reviewing court should give to a trial court's ruling on a motion to suppress will depend upon whether the trial court is in a better position to decide the issue before it. *Id.* If the issue is one of application of law to facts, and the ultimate resolution of that issue does not turn on an evaluation of credibility and demeanor of a witness, then the reviewing court may review that issue de novo. *Id.* at 89.

## Discussion

In his sole point of error, appellant argues that the trial court erred in denying his motion to suppress evidence because the warrantless search of his apartment was unreasonable.

■ The Texas Constitution provides that:

> The people shall be secure in their persons, houses, papers and possessions, from all unreasonable seizures or searches, and no warrant to search any place, or to seize any person or thing, shall issue without describing them as near as may be, nor without probable cause, supported by oath or affirmation.

TEX. CONST. Art. I, § 9. Federal and Texas state courts have held that a police search of a home without a warrant is presumptively unreasonable. *Roth v. State*, 917 S.W.2d 292, 299 (Tex.App.-Austin 1995, no pet.) (citing *United States v. Karo*, 468 U.S. 705, 715, 104 S.Ct. 3296, 3303, 82 L.Ed.2d 530 (1984)). The burden of proof is on the State to justify the warrantless search of a residence. *Brimage v. State*,

---

Appellant's Counsel: That drawer was not open when you first went into the apartment, was it?
Lane: No.
Appellant's Counsel: You had opened it?
Lane Yes.

Appellant's Counsel: Were you looking for a suspect hiding in that drawer?
Lane: Yes.
Appellant's Counsel: You were searching for drugs, weren't you?
Lane: Drugs or illegal paraphernalia.

918 S.W.2d 466, 482 (Tex.Crim.App.1994). In order for a warrantless search to be justified, the State must show that it had probable cause at the time the search was made, and that there were exigent circumstances that made it impracticable to procure a warrant. *McNairy v. State*, 835 S.W.2d 101, 106 (Tex.Crim.App.1991). Exigent circumstances justifying a warrantless entry include (1) rendering aid or assistance to persons whom the officers reasonably believe are in need of assistance; (2) preventing the destruction of evidence or contraband; and (3) protecting the officers from persons whom they reasonably believe to be present and armed and dangerous. *Id.* at 107 (citing *Stewart v. State*, 681 S.W.2d 774 (Tex.App.-Houston [14th Dist.] 1984, pet. ref'd)). Protective sweeps, used in situations similar to the third circumstance listed in *McNairy*, may be conducted to protect the safety of police officers or others, and may also justify a warrantless entry. *Reasor v. State*, 12 S.W.3d 813, 815 (Tex.Crim.App. 2000). Probable cause or exigent circumstances are not required to justify a warrantless entry where consent has been validly obtained. *Id.*

We now determine whether the police officers in this case were justified in entering and searching appellant's apartment based on the exigent circumstance of preventing the destruction of evidence.

### Prevention of the Destruction of Evidence

■ An entry into a house without a warrant may be justified if (1) the police have probable cause, and (2) there is an exigent circumstance that makes the procurement of a warrant impracticable. *McNairy*, 835 S.W.2d at 107. In *McNairy*, the officers had discovered drugs and paraphernalia at a residence located on a 10 acre plot of land. *Id.* at 103. On the same plot of land, the officers began walking on a path towards a mobile home, and, as they were within 50 feet of it, they smelled the strong odor of methamphetamine coming from the home. *Id.* As they proceeded closer, the officers heard the back door of the mobile home "thrown open," and they heard people running away through the brush. *Id.* The officers also observed chemicals used to manufacture methamphetamine stacked inside of the doorway. *Id.* An officer entered the mobile home to "see if anybody was still in the trailer." *Id.* at 107. Having found that no one was in the trailer, the officers obtained a search warrant from a magistrate before they proceeded to search the mobile home. *Id.* at 106. The court held that the officers had probable cause to believe that methamphetamine was in the mobile home. *Id.* at 106. The court further held that the officers could have reasonably believed that one or more persons remained in the trailer, that any persons remaining in the trailer would have known of the presence of the police, and that the evidence inside could have been quickly destroyed.[3] *Id.* at 107. The court concluded that the officers were justified in "entering appellant's trailer to

---

**3.** In its analysis, the court cited *United States v. Rubin,* which identified five circumstances relevant to a reasonable determination by searching officers that evidence might be destroyed before a warrant could be obtained. The circumstances listed in *Rubin* are (1) the degree of urgency involved and the amount of time necessary to obtain a warrant; (2) reasonable belief that the contraband is about to be removed; (3) the possibility of danger to police officers guarding the site of the contraband while a search warrant is sought; (4) information indicating the possessors of the contraband are aware that the police are on their trail; and (5) the ready destructibility of the contraband and the knowledge that efforts to dispose of narcotics and to escape are characteristic behavior of persons engaged in narcotics traffic. 474 F.2d 262, 268 (3rd Cir. 1973).

check for suspects who might have so destroyed evidence." *Id.* at 107.

Appellant stipulated at the pretrial hearing that there was probable cause to search his apartment. The issue remaining is whether exigent circumstances existed that justified an entry without a warrant.

Appellant argues that *McNairy* does not control in this case because the police officers manufactured the exigent circumstances. Appellant directs us to the Fifth Circuit Court of Appeals decision of *U.S. v. Richard* for support. 994 F.2d 244 (5th Cir.1993). In *Richard*, the officers were conducting surveillance of a hotel room occupied by suspects. *Id.* at 246–47. The officers approached the door, knocked, and announced that they were police officers. *Id.* at 247. The officers heard the sound of people talking softly, heard doors or drawers slamming, and footsteps moving about. *Id.* The officers kicked the door open and entered the room without a warrant. *Id.* Although the officers claimed that they did not have probable cause to obtain a warrant, the government conceded on appeal that the officers did have probable cause. *Id.* at 248. The court held that the officers could have secured the area around the room while they waited for a warrant, but because they did not, the officers had created the exigent circumstances that they wanted to rely on to justify their warrantless entry. *Id.* at 249–50.

■ In this case, the officers did not yet have probable cause when they knocked on the door of the apartment, and, thus, did not have the alternative of approaching with a warrant. Probable cause in this case developed only after the door was open and Officer Lane smelled the odor of burnt marihuana, saw the "water pipe" on

top of the refrigerator, and saw the marihuana cigarette on the coffee table from his position at the open doorway.[4] Accordingly, because the police officers in this case did not already have probable cause when they approached the apartment, and did not have the alternative option of approaching with a warrant, we hold that *Richard* is not applicable.

Appellant also contends that *McNairy* does not apply because the United States Supreme Court, in *Welsh v. Wisconsin,* held that, "application of the exigent-circumstances exception in the context of a home entry should rarely be sanctioned when there is probable cause to believe that only a minor offense ... has been committed." 466 U.S. 740, 753, 104 S.Ct. 2091, 2099, 80 L.Ed.2d 732 (1984). In *Welsh,* the defendant was suspected of driving while intoxicated and the officers arrested him in his home without first obtaining a warrant. 466 U.S. at 740, 104 S. Ct at 2092. In Wisconsin, at the time of the defendant's arrest, the offense that the defendant was suspected of was considered only a civil traffic violation for first time offenders. 466 U.S. at 746, 104 S.Ct. at 2095. The Court held that there were no exigent circumstances to justify entry because the defendant was only suspected of committing a minor offense, and the hot pursuit doctrine did not apply because there was no continuous pursuit of the defendant from the site of the accident. 466 U.S. at 753–54, 104 S.Ct. at 2099.

This court has previously distinguished *Welsh* from cases, such as this one, where the offense is "jailable." *Winter v. State,* 902 S.W.2d 571, 573 (Tex.App.-Houston [1st Dist.] 1995, no pet.). An offense of possession of marihuana in Texas ranges from a class B misdemeanor if the amount in possession is two ounces or less, to the

---

**4.** An officer is permitted to knock on a door for investigative purposes. *Joseph v. State,* 3

S.W.3d 627, 634 (Tex.App.-Houston [14th Dist.] 1999, no pet.).

equivalent of a first-degree felony if the amount of marihuana possessed is more than 2,000 pounds. TEX. HEALTH & SAFETY CODE ANN. § 481.121 (Vernon Supp.2003). In *Winter*, the suspected offense was evading arrest, which could be either a class A or class B misdemeanor. 902 S.W.2d at 574. In determining that the offense was "jailable," we held that the case was distinguishable from *Welsh*, and that *Welsh* did not apply. *Id.* Consistent with our opinion in *Winter*, we hold that, in this case, because possession of marihuana is a jailable offense, *Welsh* does not apply.

We now turn to the facts of this case to determine, under *McNairy*, whether exigent circumstances existed, which justified an entry without a warrant. Here, just as in *McNairy*, the officers approached a building where there was suspicion of narcotics dealings, and, after removing appellant and Porter from the doorway, the officers did not know if anyone still remained inside. Also, as in *McNairy*, the evidence could have been quickly destroyed. Officer Lane testified that the marihuana could have been quickly destroyed simply by flushing it down the toilet. Accordingly, we hold that because the officers in this case did not know who remained inside the apartment, they were justified in entering the apartment to look for suspects to prevent the destruction of the evidence.

**Scope of Authority to Search, and the Plain View Doctrine**

 When exigent circumstances exist, such that officers are justified in entering a home to prevent suspects from destroying evidence, the inspection should be limited to those areas where a suspect could be hiding. *See McNairy*, 835 S.W.2d at 107. In *McNairy*, upon holding that exigent circumstances existed, the court held that the officers "were justified in entering appellant's trailer *to check for*

*suspects* who might have so destroyed evidence." *Id.* (emphasis added). In *McNairy*, after the officers checked the mobile home for suspects, they waited for a search warrant before they proceeded to search any further. *Id.* at 103.

 While inside of a residence, officers may seize evidentiary items found in plain view if the following two requirements are met: (1) the initial intrusion was proper, or the police had a right to be where they were at when the discovery was made; and (2) it was immediately apparent to the police that they had evidence before them. *Green v. State*, 866 S.W.2d 701, 704 (Tex.App.-Houston [1st Dist.] 1993, no pet.).

 In this case, the record reflects that Officer Lane looked in potato chips cans, drawers, and paper bags during his initial entry into the apartment. In so doing, Lane exceeded the scope of a search conducted for the purpose of finding suspects who could destroy evidence. Any items found by Officer Lane while he was exceeding the scope of his authority are not subject to being seized by virtue of the plain view doctrine. Items that were in plain view, such as the burning marihuana cigarette on the coffee table, or the "water pipe" on top of the refrigerator, are subject to the plain view doctrine and could have validly been seized by Officer Lane during his initial entry to prevent the destruction of evidence.

**Consent to Search**

 We now determine whether the evidence seized by Officer Lane that was not in plain view was nevertheless admissible because of the later voluntary consent to search by appellant. Consent to search is an established exception to the Fourth Amendment requirements that police have a warrant and probable cause to

enter a residence. *Brimage,* 918 S.W.2d at 480. In cases in which consent follows an illegal arrest, courts have analyzed the consent to determine if it was tainted by the illegal police conduct. *See e.g., Brick v. State,* 738 S.W.2d 676, 677 (Tex.Crim. App.1987); (holding that the court of appeals erred in declining to consider whether the arrest was illegal and whether the consent was tainted by the potentially illegal police activity). The primary purpose of determining whether consent is tainted is to ensure that evidence that is the fruit of an unreasonable search or seizure by police is not admissible in court. *Wong Sun v. U.S.,* 371 U.S. 471, 488, 83 S.Ct. 407, 417, 9 L.Ed.2d 441 (1963) (when evidence results from illegal actions of police, the issue is "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint."). Accordingly, we will determine in this case whether consent following an illegal search was tainted by the police illegality.

The Texas Court of Criminal Appeals has previously indicated that, when consent follows an illegal entry onto property, the consent must be analyzed, using the factors set out in *Brick v. State,* to determine whether consent has been tainted by the illegal police conduct. *Leal v. State,* 773 S.W.2d 296, 297 (Tex.Crim.App.1989) (granting discretionary review to consider "whether taint stemming from the unlawful entry was sufficiently attenuated under the test announced in *Brick v. State* ... [such] that the consent could be deemed valid."). Although the police conduct complained of in *Brick* was an illegal arrest, the factors set out by that court are still helpful in determining whether the taint from an illegal search has been attenuated.

The *Brick* factors are (1) the proximity of the consent to the arrest; (2) whether the seizure brought about observation of the particular object for which they sought consent to search, or, in other words, whether the illegal arrest allowed officers to view the area or contraband that the officers later received consent to search; (3) whether the illegal seizure was flagrant police misconduct; (4) whether the consent was volunteered rather than requested by the detaining officers; (5) whether the arrestee was made fully aware of the fact that he could decline to consent and, thus, prevent an immediate search; and (6) whether the police purpose underlying the illegality was to obtain the consent. *Brick,* 738 S.W.2d at 680–81.

The record indicates that, in this case, appellant gave consent outside of the apartment after the initial entry by the police. The close temporal and spatial proximity of the consent to the illegal conduct makes the first factor favorable to appellant. With regard to the second factor, the testimony of Officer Lane was that he could see a marihuana cigarette and a "water pipe" from the doorway. Lane did not act illegally to observe those two items. The marihuana found in the potato chips can, and the marihuana in the brown paper bags, however, were only observed after Lane exceeded the scope of his search for suspects. We hold that the second factor does not clearly favor either appellant or the State.

In analyzing the third factor, we do not see any evidence of flagrant police misconduct. Courts usually do not deem police misconduct as "flagrant" unless the illegal conduct was engaged in for the purpose of obtaining consent, or the police misconduct was calculated to cause surprise or fear. *See e.g., Brown v. Illinois,* 422 U.S. 590, 605, 95 S.Ct. 2254, 2262, 45 L.Ed.2d 416 (1975) (holding that police misconduct had

a "quality of purposefulness," and was "calculated to cause surprise, fright, and confusion."); *Garcia v. State*, 3 S.W.3d 227, 243 (Tex.App.-Houston [14th Dist.] 1999, pet. granted) (stating that police conduct is flagrant if it is for the purpose of obtaining the consent) *aff'd*, 43 S.W.3d 527 (Tex.Crim.App.2001); *Renfro v. State*, 958 S.W.2d 880, 886 (Tex.App.-Texarkana 1997, pet. ref'd) (no flagrant conduct where police did not calculate to cause surprise or fear). The record in this case indicates that the police officers exceeded the lawful scope of their search of the apartment, but there is no evidence that appellant, who was outside of the apartment, even knew of the illegality. Because it does not appear from the record that the purpose of the police illegality was to obtain consent, or to cause surprise or fear, we hold that the third factor favors the State.

The fourth factor, whether the consent was volunteered or requested by the police, favors appellant because Officer Lane approached appellant to request his consent. The fifth factor, whether appellant was aware that he could refuse to give consent to search, favors the State. The written consent form, signed by appellant, stated in writing that appellant had the "right to refuse consent to such a search."

The sixth factor, whether the police engaged in the illegal conduct for the purpose of obtaining consent, favors the State. In our discussion of the third factor, we already determined that the police misconduct was likely not for the purpose of obtaining appellant's consent.

While two of the six factors favor appellant, we hold that the State has met its burden of proving that the taint of the illegality was sufficiently attenuated. It is significant that appellant was outside of the apartment while the illegal police conduct was occurring. The record does not indicate that appellant had any way of knowing of the police misconduct inside of the apartment. Accordingly, because there is no evidence that appellant was aware of the illegality in this case, it is not likely that his consent was tainted by it.

In determining that the State has met its burden of showing that the taint of the illegal entry was sufficiently attenuated, we hold that the trial court did not err in denying appellant's motion to suppress evidence.

We overrule point of error one.

## Conclusion

We affirm the trial court's judgment.