NO. 12-03-00024-CR



IN THE COURT OF APPEALS



TWELFTH COURT OF APPEALS DISTRICT


 

TYLER, TEXAS


 

THE STATE OF TEXAS,
§
 APPEAL FROM THE 7TH

APPELLANT


§
 JUDICIAL DISTRICT COURT OF



ROBERT BAGBY,
§
 SMITH COUNTY, TEXAS

APPELLEE






OPINION


 The State of Texas (the "State") appeals the trial court's order granting Robert Bagby's
("Appellee") motion to suppress evidence of methamphetamine seized from his premises. The State
raises one issue on appeal. We affirm.


Background

 On March 24, 2002, Smith County Deputy Constable Mark Waters ("Waters") responded
to a disturbance call. Upon his arrival, Waters saw a person later identified as Mr. McCrary
("McCrary") and Appellee in the midst of a confrontation. Waters interviewed McCrary, who
reported that he had been outside, heard a gunshot that sounded like a .22 caliber weapon, noticed
that his car window was "shot out," and saw Appellee "hunker down." At or about the time Waters
began to interview McCrary, Sheriff's Deputy Jackie Grier ("Grier") arrived on the scene. 

 Based on the information obtained from McCrary, the two officers approached Appellee and
questioned him. Appellee denied shooting out McCrary's car window and claimed that he had been
working in a shed on his property. Grier asked Appellee if he had any .22 caliber weapons, and
Appellee responded that he had such weapons in his shed. Grier then asked Appellee if he would
mind if Grier inspected the firearms to see if they had been fired recently. Appellee responded that
he did not mind having the weapons inspected, but did not want his property searched.

 Appellee and Grier entered the shed. Waters followed in the interest of officer safety. While
Grier inspected Appellee's firearms, Waters noticed a small quantity of marijuana in plain view. 
Waters made his discovery known to both Appellee and Grier. 

 Upon Grier's completion of his inspection of Appellee's firearms, the two exited the shed. 
Waters's subsequent actions are the subject of conflicting accounts in the record. According to
Waters's testimony, he followed Appellee and Grier outside. However, according to Grier's
testimony, Waters remained in the shed after Grier and Appellee exited. Specifically, Grier testified
that "Mr. Waters kept coming to the door retrieving objects from the shed and making statements
as to what they were." Grier further testified that among the items Waters brought to the doorway
and identified was the methamphetamine currently at issue.

 Near to this point in time, Deputy Constable Glen Potter ("Potter") arrived on the scene. 
Almost immediately after Potter arrived, Grier left the scene. Potter and Waters then discussed with
Appellee whether Appellee would consent to their conducting a search of his shed. According to
Waters, Appellee agreed to give written consent, stating, "[Y]ou've seen everything I've got." 
Appellee then signed a written consent form. (1) Waters testified that he found the methamphetamine
currently at issue during the search he conducted after Appellee gave written consent to search his
shed.

 Appellee was indicted for possession of between four and two hundred grams of
methamphetamine. Appellee subsequently filed a motion to suppress the contraband seized at the
scene. Following an evidentiary hearing, the trial court ordered that the evidence of
methamphetamine seized by Waters be suppressed and the State appealed.


Suppression of Evidence

 In its sole issue, the State argues that the trial court abused its discretion by suppressing the
evidence found in the warrantless search of Appellee's shed because Appellee had consented to the
search.

Standard of Review

 We review a trial court's ruling on a motion to suppress for abuse of discretion. See
Villarreal v. State, 935 S.W.2d 134, 138 (Tex. Crim. App.1996); Curry v. State, 965 S.W.2d 32, 33
(Tex. App.-Houston [1st Dist.] 1998, no pet.). In reviewing the trial court's ruling, we apply a
bifurcated standard of review. See Carmouche v. State, 10 S.W.3d 323, 327 (Tex. Crim. App.
2000); Hernandez v. State, 957 S.W.2d 851, 852 (Tex. Crim. App. 1998). We give almost total
deference to the trial court's determination of historical facts, while conducting a de novo review of
the trial court's application of the law to those facts. See Carmouche, 10 S.W.3d at 327. The trial
court is the exclusive finder of fact in a motion to suppress hearing, and as such, it may choose to
believe or disbelieve any or all of any witness's testimony. Romero v. State, 800 S.W.2d 539, 543
(Tex. Crim. App. 1990). Furthermore, when, as in the instant case, "the trial court fails to file
findings of fact, we view the evidence in the light most favorable to the trial court's ruling and
assume that the trial court made implicit findings of fact that support its ruling as long as those
findings are supported by the record." State v. Ross, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000). 
If the trial judge's decision is correct on any theory of law applicable to the case, the decision will
be sustained. Id. at 856. 

 The Texas Constitution provides that 


 [t]he people shall be secure in their persons, houses, papers and possessions, from all unreasonable
seizures or searches, and no warrant to search any place, or to seize any person or thing, shall issue
without describing them as near as may be, nor without probable cause, supported by oath or
affirmation.


Tex. Const. art. I, § 9. Federal and Texas state courts have held that a police search of a home
without a warrant is presumptively unreasonable. See Roth v. State, 917 S.W.2d 292, 299 (Tex.
App.-Austin 1995, no pet.) (citing United States v. Karo, 468 U.S. 705, 715, 104 S. Ct. 3296, 3303,
82 L. Ed. 2d 530 (1984)). The burden of proof is on the State to justify a warrantless search. See
Brimage v. State, 918 S.W.2d 466, 482 (Tex. Crim. App. 1994). 

Limited Consent to Inspect Firearms

 One justification for a warrantless search requires the State to show that it had probable cause
at the time the search was made, and that there were exigent circumstances that made it
impracticable to procure a warrant. McNairy v. State, 835 S.W.2d 101, 106 (Tex. Crim. App.1991). 
However, neither probable cause nor exigent circumstances are required to justify a warrantless entry
where consent has been validly obtained. See Reasor v. State, 12 S.W.3d 813, 815 (Tex. Crim. App.
2000). Yet, the scope of a consent search is limited by the terms of its authorization. See Henson
v. State, 915 S.W.2d 186, 193 (Tex. App.-Corpus Christi 1996, no pet.). The actual consent given
is determined by an objective standard. Id. In other words, the question is what would the typical
reasonable person have understood by the exchange between the officer and the citizen. Id.;
Cardenas v. State, 857 S.W.2d 707, 710 (Tex. App.-Houston [14th Dist.] 1993, pet. ref'd). 

 In the instant case, the record reflects that Appellee gave consent to Grier to inspect the
firearms in the shed. However, based on the undisputed facts of record concerning the exchange
between Grier and Appellee, we hold that Grier's entry into Appellee's shed was expressly limited
in scope by Appellee to Grier's inspection of the firearms to determine if they had been recently
discharged.

Exigent Circumstances - Officer Safety 

 As for Waters's entry into the shed, the evidence does not reflect that such entry fell under
the umbrella of Appellee's consent. Provided probable cause exists, exigent circumstances justifying
a warrantless entry include protecting the officers from persons whom they reasonably believe to be
present, armed, and dangerous. See McNairy v. State, 835 S.W.2d at 107. Protective sweeps may
be conducted to protect the safety of police officers or others, and may also justify a warrantless
entry. Reasor, 12 S.W.3d at 815. 

 Probable cause to search exists when reasonably trustworthy facts and circumstances within
the knowledge of the officer on the scene would lead a person of reasonable prudence to believe that
the instrumentality of a crime or evidence of a crime will be found. See McNairy, 835 S.W.2d at
106. It exists when the facts are sufficient to justify the conclusion that the property that is to be the
object of the search is probably in the area to be searched. See Rojas v. State, 797 S.W.2d 41, 43
(Tex. Crim. App. 1990). In the case at hand, the issue of probable cause was not contested. But
even so, based on the evidence that (1) Appellee and McCrary were involved in a dispute, (2)
McCrary's car window was damaged by what the evidence reflects was potentially a bullet strike, 
(3) McCrary stated he heard what he believed to be a .22 caliber weapon firing, noticed his car
window was shot out, and saw Appellee "hunker down", and (4) Appellee told the officers he had
a .22 caliber pistol in his shed, we hold that probable cause existed. 

 Moreover, Waters testified that he entered the shed in the interest of officer safety. The
record reflects that such exigent circumstances existed. Appellee indicated to the officers that he had
firearms in the shed and consented to Grier's inspection of them. Thus, we hold that Waters's
presence in the shed to protect Grier while he inspected firearms in close proximity to Appellee was
justified. See McNairy, 835 S.W.2d at 106.

Scope of Authority and the Plain View Doctrine

 A search without a warrant must be strictly circumscribed by the exigencies which justify its
initiation. See Mincey v. Arizona, 437 U.S. 385, 393, 98 S. Ct. 2408, 2413, 57 L. Ed. 2d 290 (1978). 
Here, we have held that Grier's entry into Appellee's shed was expressly limited in scope by
Appellee to Grier's inspection of the firearms to determine if they had been fired recently. As such,
once Grier completed his inspection of Appellant's firearms to determine if they had been recently
discharged, he no longer had consent to justify his continued occupation of Appellee's shed. 
Likewise, once Grier and Appellee were outside of the shed, the exigency justifying Water's
presence in the shed - Grier's safety - ended as well.

 But any items Waters observed in plain view prior to the expiration of the aforementioned
exigency were properly seized. See Beaver v. State, 106 S.W.3d 243, 249 (Tex. App.-Houston [1st
Dist.] 2003, no pet.) (officers may seize evidentiary items found in plain view if the following two
requirements are met: (1) the initial intrusion was proper, or the police had a right to be where they
were when the discovery was made; and (2) it was immediately apparent to the police that they had
evidence before them). The record reflects that, while Grier was conducting his inspection of the
firearms, Waters observed a small quantity of a substance he recognized to be marijuana. Since such
evidence was discovered prior to the time Grier exited the shed, it was lawfully seized. (2)

 However, once Grier and Appellee exited the shed, Waters's presence therein was no longer
justified. We iterate that (1) the trial court is the exclusive finder of fact and may choose to believe
or disbelieve any or all of any witness's testimony, see Romero, 800 S.W.2d at 543, and (2) when
the trial court fails to file findings of fact, we view the evidence in the light most favorable to the
trial court's ruling and assume that the trial court made implicit findings of fact that support its ruling
as long as those findings are supported by the record. See Ross, 32 S.W.3d at 855. Here, there is
conflicting evidence both as to whether Waters remained in the shed after Grier and Appellee exited,
and as to when he discovered the methamphetamine at issue. Absent findings of fact, we must defer
to the trial court as fact-finder and assume that it chose to believe Grier's testimony rather than that
offered by Waters. We assume that the trial court made the implicit finding that Waters remained
in the shed after Grier and Appellee exited and discovered the methamphetamine at issue prior to
obtaining Appellee's written consent to search. (3) 

Attenuation of Taint of Prior Illegality and Subsequent Consent

 We must next consider whether the evidence seized by Waters after Appellee and Grier
exited the shed was nevertheless admissible because of the subsequent written consent to search
given by Appellee. In cases in which consent to search follows an illegal arrest, courts have analyzed
the consent to determine if it was tainted by the illegal police conduct. See, e.g., Brick v. State, 738
S.W.2d 676, 677 (Tex. Crim. App. 1987) (holding that the court of appeals erred in declining to
consider whether the arrest was illegal and whether the consent was tainted by the potentially illegal
police activity). The primary purpose of determining whether consent is tainted is to ensure that
evidence that is the fruit of an unreasonable search or seizure by police is not admissible in court.
See Wong Sun v. United States, 371 U.S. 471, 488, 83 S. Ct. 407, 417, 9 L. Ed. 2d 441 (1963)
(when evidence results from illegal actions of police, the issue is whether, granting establishment
of the primary illegality, the evidence to which instant objection is made has been discovered by
exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the
primary taint). Accordingly, we will determine in this case whether consent following an illegal
search was tainted by the police illegality. See Beaver, 106 S.W.3d at 250.

 The Texas Court of Criminal Appeals has previously indicated that, when consent follows
an illegal entry onto property, the consent must be analyzed, using the factors set out in Brick v.
State, to determine whether consent has been tainted by the illegal police conduct. See Leal v. State,
773 S.W.2d 296, 297 (Tex. Crim. App. 1989) (granting discretionary review to consider "whether
taint stemming from the unlawful entry was sufficiently attenuated under the test announced in Brick
v. State ... [such] that the consent could be deemed valid."). Although the police conduct
complained of in Brick was an illegal arrest, the factors set out by that court are still helpful in
determining whether the taint from an illegal search has been attenuated. See Beaver, 106 S.W.3d
at 250. The Brick factors are (1) the proximity of the consent to the arrest; (2) whether the seizure
brought about observation of the particular object for which they sought consent to search, or, in
other words, whether the illegal arrest allowed officers to view the area or contraband that the
officers later received consent to search; (3) whether the illegal seizure was flagrant police
misconduct; (4) whether the consent was volunteered rather than requested by the detaining officers;
(5) whether the arrestee was made fully aware of the fact that he could decline to consent and, thus,
prevent an immediate search; and (6) whether the police purpose underlying the illegality was to
obtain the consent. See Brick, 738 S.W.2d at 680-81.

 In the instant case, the State cites both Brick and Beaver, but limits its argument with respect
to attenuation of taint to its statement that "[n]o matter what had transpired between the observation
of the contraband and then the withdrawal from the shed, the voluntary giving of consent removes
any perceived taint from the ultimate search and seizure." However, in Brick, when considering the
court of appeals' holding that the "[a]ppellant's consent removed the taint of an illegal arrest, if any,
and vitiated the need for a showing of probable cause[,]" the court of criminal appeals noted that
subsequent case law had "rendered such a simple analysis untenable." Brick, 738 S.W.2d at 678. 
We stress that the State has the burden of putting forth clear and convincing evidence that "due
consideration of the additional factors [set forth in Brick] militates in favor of the conclusion that
the taint otherwise inherent in the illegality of the arrest has dissipated." Id. at 681. By failing to
offer any analysis of the Brick factors, the State has given what the court in Brick referred to as
"short shrift" to the essence of this appeal, and by so doing, has waived the issue. See Tex. R. App.
P. 38.1(h); Brick, 738 S.W.2d at 678. Nonetheless, based on our consideration of the Brick factors,
the outcome would not be favorable to the State. 

 The record indicates that, in this case, Appellee gave consent outside of the shed soon after
the initial entry by law enforcement. The close temporal and spatial proximity of the consent to the
illegal conduct makes the first factor favorable to Appellee. See, e.g., Beaver, 106 S.W.3d at 250. 
Turning to the second factor, as noted above, Grier had consent to inspect Appellee's weapons, while
Waters, properly inside the shed in the interest of officer safety, observed the marijuana in plain
view. Neither officer acted illegally in observing such items. However, the methamphetamine that,
according to Grier's testimony, Waters brought to the doorway of the shed after Grier and Appellee
had exited was discovered after Appellee's consent and the exigent circumstances justifying
Waters's presence in the shed had expired. Therefore, the second factor does not clearly favor
Appellee or the State. Id.

 Considering the third factor, courts ordinarily do not deem police misconduct as "flagrant"
unless the illegal conduct was engaged in for the purpose of obtaining consent, or the police
misconduct was calculated to cause surprise or fear. Id. (citing Renfro v. State, 958 S.W.2d 880,
886 (Tex. App.-Texarkana 1997, pet. ref'd)). However, in Beaver, the court noted that although the
record indicated that the police officers exceeded the lawful scope of their search of the appellant's
apartment, there was no evidence that the appellant, who was outside of the apartment, even knew
of the illegality. See Beaver, 106 S.W.3d at 251. The instant case is distinguishable from Beaver
on this factor. Here, the record reflects that Appellee was plainly aware of Waters's conduct
because, according to Grier's testimony, Waters "kept coming to the door, retrieving objects from
the shed and making statements as to what they were." Further still, Waters testified that as they
were talking with Appellee about his giving consent to search, Appellee stated, in conjunction with
his signing of the consent form, "[Y]ou've seen everything I've got." Viewing the evidence, as we
must, in the light most favorable to the trial court's ruling, we conclude that the record supports the
trial court's implicit finding that Waters's illegal conduct was calculated to cause surprise or fear. 
Therefore, the third factor is favorable to Appellee.

 The fourth factor - whether the consent was volunteered or requested by the police - favors
Appellee because Waters's and Potter's respective testimony supports that they asked for Appellee's
consent. The fifth factor favors neither party. The record contains no evidence supporting or
negating that Appellee was informed of his right to refuse consent. In Beaver, the written consent
form signed by the appellant stated in writing that the appellant had the right to refuse consent to
search. Id. While, in the instant case, Appellee signed a written consent form, that form was not
offered into evidence at the hearing on Appellee's motion to suppress, nor is it otherwise part of the
appellate record. Moreover, there was no testimony concerning whether the form contained such
information.

 The sixth factor - whether the police engaged in the illegal conduct for the purpose of
obtaining consent - favors Appellee. In our discussion of the third factor, we already determined that 

the record supports the trial court's implicit finding that Waters's illegal conduct was calculated to
cause surprise or fear.

 In sum, the record, considered in the light most favorable to the trial court's ruling, supports
the trial court's implicit finding that factors one, three, four, and six favor Appellee, while factors
two and five favor neither party. We conclude that even had the State not waived this issue on
appeal by failing to offer cogent analysis on this point, it failed to meet its burden because the record
reflects that the taint of the illegality was not sufficiently attenuated. Appellee's knowledge of
Waters's conduct is significant. See Beaver, 106 S.W.3d at 251. Therefore, we hold that the trial
court did not err in granting Appellee's motion to suppress. The State's sole issue is overruled.


Conclusion

 Having overruled the State's sole issue, we affirm the trial court's ruling.


 JAMES T. WORTHEN 

 Chief Justice



Opinion delivered September 30, 2003.

Panel consisted of Worthen, C.J., Griffith, J. and DeVasto, J.




(PUBLISH)
1. Although it is undisputed that Appellee gave written consent to search, the consent form Appellee signed
was not offered into evidence at the hearing on Appellee's motion to suppress, nor is it otherwise part of the
appellate record.
2. Appellee has not raised a cross point arguing that the trial court erred in failing to suppress evidence that
Waters discovered in plain view while Grier was inspecting Appellee's firearms. The legality of this seizure is
relevant because it relates to the extent of taint which must be attenuated so as to validate Appellee's subsequently-given written consent to search the shed.
3. The State argues that because Grier was not present when the search was conducted pursuant to
Appellee's written consent, Grier's testimony is not relevant to the determination of whether the methamphetamine
found pursuant to that search should have been suppressed. We disagree. As set forth above, considering the
evidence, as we must, in a light most favorable to the trial court's ruling, we are entitled to assume that the trial court
implicitly found that Grier's testimony was true and that Waters discovered the methamphetamine at issue prior to
obtaining Appellee's written consent. The record does not support that Waters discovered a distinct quantity of
methamphetamine separate from the quantity Grier testified he saw Waters bring to the doorway of the shed. Rather,
Waters testified that he left the shed after he observed the marijuana. Thus, the State's position is untenable given
our standard of review.