ACCEPTED
12-15-00043-CR
TWELFTH COURT OF APPEALS
TYLER, TEXAS
7/15/2015 5:23:59 PM
CATHY LUSK
CLERK

NO. 12-15-00043-CR

IN THE COURT OF APPEALS

RECEIVED IN
12th COURT OF APPEALS
TYLER, TEXAS
7/15/2015 5:23:59 PM
CATHY S. LUSK
Clerk

FOR THE TWELFTH SUPREME JUDICIAL DISTRICT

AT TYLER, TEXAS

CAUSE NUMBER 2014-0129

IN THE 159TH DISTRICT COURT

IN ANGELINA COUNTY, TEXAS

FILED

7/15/2015

Twelfth Court of Appeals
Cathy Lusk
Clerk

MIKO PARKS,                                        APPELLANT

vs.

THE STATE OF TEXAS                          APPELLEE

APPELLANT'S BRIEF

T. RYAN DEATON
TBC # 24007095

103 E. Denman
Lufkin, Texas 75901
(936) 637-7778
Attorneys for Appellant

**Appellant respectfully requests oral argument in this case.**

NO. 12-15-00043-CR

---

IN THE COURT OF APPEALS

FOR THE TWELTH SUPREME JUDICIAL DISTRICT

AT TYLER, TEXAS

---

CAUSE NUMBER 2014-0129

IN THE 159TH DISTRICT COURT

IN ANGELINA COUNTY, TEXAS

---

MIKO PARKS,                                        APPELLANT

vs.

THE STATE OF TEXAS                                 APPELLEE

---

APPELLANT'S BRIEF

---

TO THE HONORABLE JUSTICES OF SAID COURT:

COMES NOW Appellant, Miko Parks, Appellant in the above styled and numbered cause, by and through his attorneys of record, and respectfully submits this, his *Brief*, pursuant to the rules of Appellate Procedure.

i

## CERTIFICATE OF INTERESTED PARTIES

The following is a list of the parties to this action and their counsel and is provided to assist this Court with possible disqualifications or recusal:


HONORABLE Paul White, presided at trial

T. Ryan Deaton, represented Appellant at trial

Katrina Carswell, represented the State at trial

T. Ryan Deaton, represents Appellant on Appeal

April Ayers-Perez, Angelina County District Attorney's Office, represents the state on appeal

Address for Appellate counsel is 103 E. Denman, Lufkin, Texas  75901

Mailing address for State counsel is P.O. Box 908, Lufkin, Texas  75902-0908

# **TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PARTIES ............................................... ii

TABLE OF CONTENTS................................................................ iii

INDEX OF AUTHORITIES ........................................................ iv

STATEMENT REGARDING ORAL ARGUMENT ................................. vii

STATEMENT OF PROCEDURAL HISTORY ........................................ viii

ISSUES PRESENTED .................................................................. ix

      I. Was it error by the trial court to deny appellant's
      motion to suppress evidence because the initial entry
      into appellant's residence was done without consent
      or under exigent circumstances?

STATEMENT  OF FACTS .............................................................x

SUMMARY OF THE ARGUMENT ........................................... xiii

GROUND FOR REVIEW NO. ONE ...............................................1

PRAYER.................................................................. 11

CERTIFICATE OF SERVICE ................................................. 12

# INDEX OF AUTHORITIES

I.  CASE AUTHORITIES

*Texas Court of Criminal Appeals*

*Brick v. State,* 738, S.W.2d 676, 680-81 (Tex. Crim. App. 1987) ............... 10

*Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000)................2

*Gutierrez v. State,* 221 S.W.3d 680, 685 (Tex. Crim. App. 2007)..... 1, 5, 6, 7

*Juarez v. State*, 758 S.W. 2d 772, 775 (Tex. Crim. App. 1988)......................3

*Leal v. State,* 773 S.W.2d 296,297 (Tex. Crim. App. 1989) ...........................9

*Maxwell v. State*, 73 S.W.3d 278 (Tex. Crim. App. 2002)......................... 2, 4

*Meeks v. State*, 692 S.W.2d 504, 509 (Tex. Crim. App. 1985) .......................3

*McNairy v. State*, 835 S.W. 2d 101, 106
        (Tex. Crim. App. 1991) ......................................................................2

*Reasor v. State*, 12 S.W.3d 813, 815 (Tex. Crim. App. 2000) ........................2

*State v. Ross*, 32 S.W. 3d 853,855 (Tex. Crim. App. 2000)............................2

*Turrubiate v. State*, 399 S.W.3d 147
        (Tex. Crim. App. 2013) ...................................................... 1, 4, 6, 7, 9

*Villarreal v. State*, 935 S.W.2d 134, 138
        (Tex. Crim. App. 1996) ......................................................................2


*Texas Court of Appeals*

*Corea v. State*, 52 S.W.3d 311
(Tex. App. — Houston [1st Dist.] 2001, pet. ref'd) ........................................3

*Pace v. State*, 318 S.W.3d 526, 533
 (Tex. App. – Beaumont 2010, no pet.)............................................. 7, 9

*Rhodes v. State*, 913 S.W.2d 242, 249
 (Tex. App. – Fort Worth 1995), aff'd, 945 S.W.2d 115
 (Tex. Crim. App. 1997) .....................................................................7

*State v. Bagby*, 119 S.W.3e 446, 450
(Tex. App. – Tyler 2003, no pet) ....................................................... 2, 9, 11


*United States Court of Appeals*

*United States v. Jones*, 239 F.3d 716, 721 (5th circ. 2001)........................ 7, 8

*United States v. Richard*, 994 F.2d 244 (5th circ. 1993) .................................7

*United States v. Vega*, 221 F.3d 789, 798(5th Circ. 2000).............................7

*United States v. Gomez-Moreno*, 479 F.3d 350, 355
 (5th Circ. 207) ................................................................................. 7,8

*United States v. Jones*, 239 F,3d 716, 720 (5th Circ. 2001) ..........................7


*United States Supreme Court*

*Bumper v. North Carolina*, 391 U.S. 543, 548 (1968) ....................................3

*Ohio v. Robinette*, 519 U.S. 33, 40 (1996) ....................................................2

*Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973)  ...............................2

II.  RULES & STATUTES

*Texas Rules & Statutes*

U.S. CONST., Amend. 4.................................................................................1

TEX. CONST., Art. I, § 9 ............................................................... 1,2

Tex. R. App. P. 26.21 ....................................................................... i

## STATEMENT REGARDING ORAL ARGUMENT

Appellant respectfully requests oral argument in this case.

## STATEMENT OF PROCEDURAL HISTORY

On March 6, 2014, Miko Parks was charged by indictment with one count of Possession of Marijuana and one count of Possession of Substance in Penalty Group 1. CR 12. The defendant filed a Motion to Suppress on April 21, 2014. CR 17. A hearing on Motion to Suppress was held on April 29, 2014, and continuing on May 27, 2014. On June 6, 2014, the court signed an order denying the Motion to Suppress. CR 36. On December 2, 2014, the defendant pled guilty to both counts. CR 42. On January 30, 2015, the Honorable Paul White sentenced the defendant to one hundred nineteen (119) months confinement in the Institutional Division, TDCJ on count one and ten (10) years deferred adjudication on count two. CR 47. On February 2, 2015, Parks timely filed his written Notice of Appeal as required by Tex. R. App. P. 26.21. CR 52. This brief is due on July 15, 2015, after two duly granted extension.

ISSUE PRESENTED

ISSUE ONE

IT WAS ERROR BY THE TRIAL COURT TO DENY APPELLANT'S
MOTION TO SUPPRESS EVIDENCE BECAUSE THE INITIAL ENTRY
INTO APPELLANT'S RESIDENCE WAS DONE WITHOUT CONSENT
OR UNDER EXIGENT CIRCUMSTANCES AND ANY SUBSEQUENT
CONSENT WAS TAINTED BY THE UNLAWFUL ENTRY.

## STATEMENT OF FACTS

Prior to July 31, 2014, members of the Texas Department of Public Safety received information concerning the trafficking of marijuana from 3507 N. John Redditt Drive, Apartment 52, Lufkin, Texas. 2 RR 10.

The agents decided to make contact with the resident of the apartment to discuss that information, a procedure known as a "knock and talk". 2 RR 15. The agents did not have a search or arrest warrant. 2 RR 17.

At approximately 11:00 a.m. on the morning of July 31, 2014, Agents Shroeder, Holland, and Cortines arrived at the High Point Apartments, 3507 N. John Redditt Drive, Apartment 52. Officer Shroeder, who was in plain clothes, walked up a flight of stairs and knocked on the door. 2 RR 14. The other agents were wearing police-type uniforms and raid gear with exposed badges and waited downstairs. 2 RR 15.

The agents had a preplanned signal that when the door was opened, the police officers who were in police-type uniforms waiting at the bottom of the stairs were to come up the stairs. 2 RR 63. The defendant, who is 6'2" and 300 pounds, opened the door twelve to eighteen inches. 3 RR 8. The officer could not have seen anything within the apartment. 3 RR 8. The officer then stated I smell marijuana, so you need to get back, and all three of the officers entered the apartment. 3 RR 9.

At the hearing on the Motion to Suppress, Agent Schroeder testified that there was no other basis for the agents to enter the apartment other than their belief that the defendant gave valid consent to enter the apartment. 2 RR 92. Agent Shroeder also states that the agents entered the residence by consent but could not recall the conversation that led him to believe that the defendant consented for the agents to enter the apartment. 2 RR 90. Although the defendant had the right to consent because he resided there three or four nights out of the week and kept his belongings in the apartment ( 3 RR 6), the defendant states that the agents never asked for permission to come into the apartment. 3 RR 10.

Two days after the arrests Agent Shroeder completed an affidavit in which he indicated that he "smelled marijuana" and "observed a Smith & Wesson .40 Caliber pistol positioned at the arm of the couch in the living room within an arm's reach of the female who was identified as Magin Cne Watts" and also that "investigators entered the residence and secured the firearm on the couch." Nothing in Agent Shroeder's affidavit mentioned that the agents entered the house by consent. 2 RR 67-68.

The agents later obtained search warrants regarding some telephones taken from the residence. An affidavit was made for that search warrant as

well.  The agents never mentioned anything in that affidavit about entering

the house by consent. 2 RR 88.

## SUMMARY OF THE ARGUMENT

In examining all of the evidence submitted by the state and all of the evidence offered by the defendant at the hearing on Motion to Suppress, the state did not prove that the initial entry into Appellant's residence was done with consent.

ISSUE NO. 1

IT WAS ERROR BY THE TRIAL COURT TO DENY APPELLANT'S MOTION TO SUPPRESS EVIDENCE BECAUSE THE INITIAL ENTRY INTO APPELLANT'S RESIDENCE WAS DONE WITHOUT CONSENT OR UNDER EXIGENT CIRCUMSTANCES AND ANY SUBSEQUENT CONSENT WAS TAINTED BY THE UNLAWFUL ENTRY.

## A. Consent to Enter the Residence

The Fourth Amendment of the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no Warrant shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST., Amend. 4. The Texas Constitution equivalent, Article I, Section 9,

provides:

> The people shall be secure in their persons, houses, papers and possessions, from all unreasonable seizures, and no warrant to search any place, or to seize any person or thing, shall issue without describing them as near as may be, nor without probable cause, supported by oath or affirmation.

TEX. CONST., Art. I, § 9. "A warrantless entry into a residence is presumptively

unreasonable." *Turrubiate v. State*, 399 S.W.3d 147, 151 (Tex. Crim. App. 2013)

(citing *Gutierrez v. State*, 221 S.W.3d 680, 685 (Tex. Crim. App. 2007)). The two

available avenues to justify a warrantless search are, first, if valid consent to search

has been obtained and, second, if probable cause is present at the time of the search

and exigent circumstances make obtaining a warrant impracticable. *State v.*

1

*Bagby*, 119 S.W.3d 446, 450 (Tex. App.—Tyler 2003, no pet.) (citing *McNairy v. State*, 835 S.W.2d 101, 106 (Tex. Crim. App. 1991); *Reasor v. State*, 12 S.W.3d 813, 815 (Tex. Crim. App. 2000)). A trial court's ruling on a motion to suppress is reviewed for abuse of discretion through application of a bifurcated standard of review. *Id.* at 449 (citing *Villarreal v. State*, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996); *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000)). Almost total deference is given to the trial court's determination of historical facts while the trial court's application of the law to those facts is reviewed de novo. *Id.* (citing *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000)). When no findings of fact are filed by the trial court, the evidence is reviewed in a light most favorable to the ruling with the assumption the trial court made implicit findings of fact. *Id.* (quoting *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000)). These implied findings of fact must be supported by the record. *Id.*

"Consent to search is one of the well-established exceptions to the constitutional requirements of both probable cause and a warrant." *Maxwell v. State*, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973)). Validity of consent is a fact question determined by all the circumstances. *Id.* (citing *Ohio v. Robinette*, 519 U.S. 33, 40 (1996)). The state must prove the validity of consent to search by a preponderance of the evidence under the federal constitution and by clear and convincing

2

evidence under the Texas Constitution. *Id.* The State must show, by clear and convincing evidence, that the consent was given freely and voluntarily; positively and unequivocally; and not under duress or coercion. *Corea v. State*, 52 S.W.3d 311, 316 (Tex. App.—Houston [1st Dist.] 2001, pet. ref'd) (citing *Bumper v. North Carolina*, 391 U.S. 543,548 (1968); *Juarez v. State*, 758 S.W.2d 772, 775 (Tex. Crim. App. 1988)). Acquiescence to a claim of lawful authority cannot discharge this burden. *Id.* Consent to search cannot be lightly inferred. *Meeks v. State*, 692 S.W.2d 504, 509 (Tex. Crim. App. 1985); *accord Corea*, 52 S.W.3d at 316.

Mr. Parks testified that he lived at the apartment located at 3507 North John Redditt, Apartment 52, Lufkin, Texas, three or four nights out of the week. He further testified that he kept his clothing and belongings in the apartment. RR Vol 3 at 6. Although Mr. Parks' testimony establishes his ability to give consent for the agents to enter the apartment, nowhere in the record before the court can clear and convincing evidence be found that indicates Mr. Parks freely, voluntarily, positively, and unequivocally gave consent for Agents Shroeder, Cortinez, and Holland to enter the apartment without a warrant. The only evidence provided by the State was Agent Shroeder's testimony regarding "a discussion" of which he can't recall any words or phrases used, R.R. Vol 2 at 27, only that they were "allowed to come in." *Id.* at 29. Nowhere during the his testimony does Agent Shroeder provide any words or phrases that Mr. Parks used to freely, voluntarily,

3

positively, or unequivocally give consent to enter the apartment, but instead repeatedly admits he cannot give the exact words and that he never summarized any of the consents or conversations in any affidavits. *Id.* at 27; 29; 70–71; 88–90. Further, none of Agent Shroeder's testimony regarding the consent was able to be corroborated by any other individual. *See id.* at 119–20 (Agent Holland admitting to not hearing the initial conversation at the door); R.R. Vol. 3 at 10–11; 13 (Mr. Parks testifying that Agent Shroeder never asked permission to enter and was never granted permission to enter); R.R. Vol. 3 at 37–38 (Ms. Watts testifying that Mr. Parks never gave consent and she did not hear anyone ask permission to enter). Agent Shroeder does however admit that his sole justification for entering the residence was the alleged consent he received. R.R. Vol. 2 at 92–93. While Agent Shroeder's testimony may provide some scintilla of evidence of consent, it does not reach the high clear and convincing standard that is required in Texas. *See Maxwell*, 73 S.W.3d at 281.

## B. Exigent Circumstances

Lacking consent, the agents must have had probable cause coupled with exigent circumstances to justify entering Mr. Parks' residence. *See Turrubiate v. State*, 399 S.W.3d 147, 151 (Tex. Crim. App. 2013) ("the State has the burden of showing that probable cause existed at the time the search was made and that exigent circumstances requiring immediate entry made obtaining a warrant

4

impracticable."). "Probable cause exists when reasonably trustworthy circumstances within the knowledge of the police officer on the scene would lead him to reasonably believe that evidence of a crime will be found." *Id.* Once probable cause exists, exigent circumstances may dictate immediate, warrantless entry of a residence under three circumstances: (1) when officers are providing aid to persons reasonably believed to be in need of it; (2) when officers are protecting other officers from persons reasonably believed to be present, armed, and dangerous; and (3) when officers are preventing the destruction of evidence or contraband. *Id.* (citing *Gutierrez v. State*, 221 S.W.3d 680, 685 (Tex. Crim. App. 2007)).

In the instant case, the existence of probable cause is not in dispute at the time of the initial "knock" and was likely established just prior to the initial "knock" based on Agent Shroeder's detection of the odor of marijuana from around the door prior to the "knock." *See* R.R. Vol 2 at 84–85 ("I believed there was a possibility of probable cause because I could smell marijuana in the area at that point, not until the door opened did I realize it was coming from the apartment."). The State must still prove exigent circumstances existed at the time of the initial entry. Only the second and third categories listed above have any inkling of support in the record, but still fall short of justifying a warrantless entry into Mr. Parks' residence.

5

**I. Odor of Marijuana**

The prevention of destruction of evidence or contraband is one of the three categories of exigent circumstances. *Turrubiate*, 399 S.W.3d at 151(citing *Gutierrez v. State*, 221 S.W.3d 680, 685 (Tex. Crim. App. 2007)). It has been conclusively established that the odor of marijuana coupled with an officer making his presence known does not justify the warrantless entry of a residence on the premise of preventing destruction of evidence. *Id.* at 149 ("We agree with the holding by the court of appeals that probable cause to believe that illegal drugs are in a home coupled with an odor of marijuana from the home and a police officer making his presence known to the occupants do not justify a warrantless entry."). Courts require additional evidence that indicates destruction of evidence was imminent. *Id.* at 154.

Here, Agent Shoeder's own testimony indicates that he perceived no indication that Mr. Parks or Ms. Watts intended to destroy any evidence. R.R. Vol. 2 at 93. Further, Agent Shoeder affirmed that he believes his sole justification or "authority to enter the residence rises or falls upon proof of a valid consent by Mr. Parks" and not upon any imminent destruction of evidence. *Id.* at 92–93. Without any additional evidence indicating destruction of evidence was imminent, the warrantless entry into the residence was not justified. *See Turrubiate*, 399 S.W.3d at 153 ("In other words, the Court required that the record show proof of imminent

6

destruction based on affirmative conduct by those in possession of narcotics in a particular case.").

## II. Presence of Firearm

The protection of other officers from present, armed, and dangerous persons is a second of the three categories of exigent circumstances. *Turrubiate*, 399 S.W.3d at 151(citing *Gutierrez v. State*, 221 S.W.3d 680, 685 (Tex. Crim. App. 2007)). "The perspective of a reasonable officer on the scene is a consideration in the analysis of the reasonableness of the governmental intrusion." *Pace v. State*, 318 S.W.3d 526, 533 (Tex. App.—Beaumont 2010, no pet.) (citing *Rhodes v. State*, 913 S.W.2d 242, 249 (Tex. App.—Fort Worth 1995), *aff'd*, 945 S.W.2d 115 (Tex. Crim. App. 1997)). Courts have distinguished between situation where suspects detect law enforcement surveillance—and the exigent circumstances exception applies—and situations where officers make their presences known—and the exigent circumstances exception does not apply. *United States v. Jones*, 239 F.3d 716, 721 (5th Circ. 2001) (referring to *United States v. Richard*, 994 F.2d 244 (5th Circ. 1993)). The actions or inaction of the government cannot be the cause of the exigent circumstances. *Id.* at 720 (citing *United States v. Vega*, 221 F.3d 789, 798 (5th Circ. 2000)). The "reasonableness of the officers' investigative tactics leading up to the warrantless entry" is used to determine whether the officers created the exigency. *United States v. Gomez-Moreno*, 479 F.3d 350, 355

(5th Circ. 2007) (quoting *United States v. Jones*, 239 F.3d 716, 720 (5th Circ. 2001)). The "knock and talk" tactic has been considered reasonable where officers approaching a house are not convinced criminal activity are taking place and have no reason to believe the occupants are armed. *Id.*

In the instant case, Agent Shroeder testified that he knew Mr. Parks was a licensed concealed handgun carrier and probably had a weapon with him. R.R. Vol. 2 at 32, 93–94. Agent Shroeder further admits that at the time he carried out the knock and talk, he believed he had enough information to secure a search warrant, but instead proceeded with the knock and talk tactic because it was simple "a faster and easier process." *Id.* at 85–87. These two aspects are an affront to the rational that Courts have used to justify the reasonableness of the "knock and talk" tactic. *See Gomez-Moreno*, 479 F.3d at 355. Agent Shroeders own testimony establishes that he felt probable cause that criminal activity was taking place existed prior to performing the knock and talk procedure and further that he knew Mr. Parks was probably armed; both of which indicate that any exigency was created by government action. *Id.* The record also supports the conclusion that Mr. Parks was completely unaware of any police surveillance or suspicion. R.R. Vol 2 at 34 (indicating Mr. Parks and Mrs. Watts acted surprised at the fact officers had knocked on their door). Agent Shoeder could have chosen to secure a warrant without ever alerting Mr. Parks or Ms. Watts to police presence but instead chose

8

to announce his presence and create potential exigent circumstances to gain entry into the residence.

Even if the Court concludes probable cause did not exist prior to the knock and talk procedure, the record does not reflect that Agent Shroeder believed the firearm, which he expected to be found, posed a danger, and he further testified that it played no part in his decision to enter the residence. R.R. Vol. 2 at 93. From Agent Shroeder's perspective as a reasonable officer on the scene, the presence of the firearm did not pose a danger and did not create an exigency to justify entry into the residence. *See Pace*, 318 S.W.3d at 533 (acknowledging that the perspective of a reasonable officer on the scene is a primary consideration as to the reasonableness of government action) ; *see also Turrubiate*, 399 S.W.3d at 151 (representing persons must be present, armed, and ***dangerous*** to create and exigency related to officer safety (emphasis added)). These factors would further indicate that the firearm present in Mr. Parks residence did not create an exigent circumstance that would justify a warrantless entry into the apartment.

## C. Subsequent Consent to Search not Attenuated from Unlawful Entry

When consent follows and illegal entry into a residence, the consent must be analyzed to determine whether the consent was tainted by illegal police conduct. *Bagby*, 119 S.W.3d at 452 (citing *Leal v. State*, 773 S.W.2d 296, 297 (Tex. Crim.

App. 1989). There are six factors Courts use to determine if consent is sufficiently attenuated from the illegal conduct:

(1) the proximity of the consent to the arrest;

(2) whether the seizure brought about observation of the particular object for which they sought consent to search, or, in other words, whether the illegal arrest allowed officers to view the area or contraband that the officers later received consent to search;

(3) whether the illegal seizure was flagrant police misconduct;

(4) whether the consent was volunteered rather than requested by the detaining officers;

(5) whether the arrestee was made fully aware of the fact that he could decline to consent and, thus, prevent an immediate search; and

(6) whether the police purpose underlying the illegality was to obtain the consent.

*Id.* at 452–53 (citing *Brick v. State*, 738 S.W.2d 676, 680–81 (Tex. Crim. App. 1987)).

The majority of the above factors favor a finding that consent was tainted by the illegal entry. The first factor is in Mr. Parks favor in that Ms. Watts gave consent shortly after police illegally entered their residence. R.R. Vol 2 at 44. The second factor again favors Mr. Parks in that the illegal entry into the apartment

resulted in officers seeing a quantity of marijuana and arresting both him and Ms. Watts. *Id.* at R.R. Vol 2 at 297. The third factor also favors Mr. Parks in that the agents entered Ms. Watts residence while she was in a state of undress and placed her in handcuffs, removed her boyfriend, Mr. Parks, from the residence before seeking her consent to search. R.R. Vol. 3 at 39–42. The illegal actions of the agents were aimed to cause surprise and fear in Ms. Watts and cause the third factor to favor Mr. Parks. *See Bagby*, 119 S.W.3d at 454. The fourth factor is in favor of Mr. Parks. Mr. Shroeder acknowledged to seeking the consent from Ms. Watts. R.R. Vol. 2 at 44. The fifth factor favors the State in that Agent Shroeder testified to informing Ms. Watts that she could refuse consent. R.R. Vol. 2 at 100. The sixth factor follows the same reasoning as the third factor and favors Mr. Parks. *See Bagby*, 119 S.W.3d at 454 (finding factors that support the third factor also support the sixth factor).

## PRAYER

Wherefore, in accord with the facts, law, and argument offered above, Appellant Miko Parks asks this Court to reverse his conviction and order a dismissal of the charges, or, in the alternative, the suppression of all evidence obtained after entry into the apartment or grant him other such relief as is appropriate.

11

Respectfully submitted,

DEATON LAW FIRM
103 East Denman
Lufkin, TX 75901
Tel: (936) 637-7778
Fax: (936) 637-7784

By: _____
    T. Ryan Deaton
    State Bar No. 24007095
    Attorney for Miko Parks

## CERTIFICATE OF SERVICE

This is to certify that on July 15, 2015, a true and correct copy of the above and foregoing document was served on the District Attorney's Office, Angelina County, Texas, by facsimile transmission.

_____
T. Ryan Deaton