Affirmed and Memorandum Opinion filed August 31, 2004









Affirmed and Memorandum
Opinion filed August 31, 2004.

 

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-03-00520-CR

____________

 

STEVE HERNANDEZ, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 262nd District Court

Harris
County, Texas

Trial Court Cause No. 920,852

 



 

M E M O R
A N D U M   O P I N I O N

After
the trial court denied his motion to suppress, appellant Steve Hernandez  pleaded guilty to possession with intent to
deliver at least 400 grams of cocaine. 
Under a plea agreement, the trial court sentenced appellant to 25 years= imprisonment in the Texas Department
of Criminal Justice, Institutional Division and assessed a one-dollar
fine.  On appeal, appellant contends that
the trial court erred in denying his motion to suppress.  We affirm.








                              I. 
Factual and Procedural Background

During a drug interdiction, Houston
Police Department narcotics officers D. Green and T.R. Walker found two
kilograms of cocaine in the car of Angela Cochran and her male companion.  The couple told the officers that they had
obtained the cocaine from an individual at 1730 Saxon Street.  They described the individual as a young,
chubby Hispanic male, named ATony,@ who had a Abuzz@ haircut and a Aunibrow,@ that is, a single eyebrow that
crossed above both eyes.  The couple also
told the officers that the individual would be waiting at the Saxon address for
them to return with the money for the two kilograms of cocaine seized by the
officers.  Cochran and her companion also
told the officers that it was possible that additional cocaine might be located
at the Saxon address. Based on this information, the officers decided to
conduct a surveillance that same day of the residence at 1730 Saxon.  Numerous officers set up surveillance of the
house located at that address.

Officer Green drove by the house and saw about eight people
in the front yard.  He also saw a man
later identified as Antonio Mireles standing in the driveway, talking on a cell
phone and watching cars drive by. 
Mireles matched the description provided by Cochran and her
companion.  Officer Green noted that
Mireles was the only male in the yard who had a Aunibrow.@

Officer Walker set up surveillance from a school located
about fifty yards from the residence.  He
noticed several people near the garage and saw appellant sitting on a bench in
front of the garage.  Officer Walker also
saw Mireles walk down the driveway to the street and look around.  Mireles looked in the direction of Officer
Walker.  Mireles then got in a car and
circled the block, and when he returned, he parked his car in the driveway of
one of his neighbors.  Another young man
from the house at 1730 Saxon drove by Officer Walker, slowed down, and looked
out as he passed.  The officers suspected
Mireles and his companions were looking out for someone, which would be
consistent with what the informants had stated about their waiting for payment
for the cocaine.








Officer
Walker testified that, when he first set up surveillance, the people in the
yard were just Amilling around,@ but that, after they appeared to
notice him, they started moving about and checking out Officer Walker.  Suspecting that these people were aware of
the police presence, the officers decided to do a Aknock and talk.@ 
As the police officers approached the residence in full raid gear, the
people in the yard of the house took notice. 
Walker saw Mireles grab a cardboard box, and it appeared that he was
going to take it inside the house, but then he stopped and handed the box off
to appellant, who started walking around the side of the house into the
backyard.

Sergeant
W. Rios, the supervising police narcotics officer on the scene, was not
initially in a position where he could see the house at 1730 Saxon.  But, when he heard Officer Walker state over
the radio that the persons at the residence appeared to be aware of the police
presence, Sergeant Rios proceeded to the Saxon address to participate in the
investigation.  Sergeant Rios then heard
Officer Walker say that someone at the location was running with a cardboard
box.  When Officer Walker radioed this
information in, Sergeant Rios decided to move in to prevent destruction of the
contents of the box, which the officers believed contained cocaine.  Sergeant Rios entered the neighboring yard,
and, through an open gate in the wooden fence, saw appellant running with the
box in the backyard of the house at 1730 Saxon. 
When Sergeant Rios ordered appellant to stop, appellant stopped, dropped
the box, and turned around.  The box had
an open top without a lid and Sergeant Rios could see cigarette cartons, which
appeared to contain cocaine.  A field
test confirmed that the substance was cocaine, which was later determined to
weigh seven kilograms.

Appellant
was arrested and charged by indictment with the offense of possessing at least
400 grams of cocaine with intent to deliver. 
Following a joint hearing on appellant=s motion to suppress and Mireles=s motion to suppress, the trial court
denied appellant=s motion to suppress. 
Under a plea agreement, the trial court sentenced appellant to 25 years= imprisonment in the Texas Department
of Criminal Justice, Institutional Division and assessed a one-dollar fine. 








                                                       II. 
Issues Presented

On
appeal, in two issues, appellant asserts (1) the trial court erred in denying
his motion to suppress evidence based on his allegedly illegal arrest and the
allegedly unreasonable search and seizure of the tangible evidence, including
the cocaine; and (2) appellant has standing to assert these challenges. 

                                                   III. 
Standard of Review

In
reviewing the trial court=s ruling on a motion to suppress evidence, we apply a
bifurcated standard of review, giving Aalmost total deference to a trial
court=s determination of historic facts@ and reviewing de novo the trial
court=s application of the law of search
and seizure.  See Guzman v. State,
955 S.W.2d 85, 88B89 (Tex. Crim. App. 1997). 
If the issue involves the credibility of a witness, such that the
demeanor of the witness is important, then greater deference will be given to
the trial court=s ruling on that issue. 
Id. at 89.  The amount of
deference that we should give to a trial court=s ruling on a motion to suppress will
depend upon whether the trial court is in a better position to decide the issue
before it.  Id.  If the issue is one of application of law to
facts, and the ultimate resolution of that issue does not turn on an evaluation
of credibility and demeanor of a witness, then we may review that issue de
novo.  Id.  When the trial court does not make explicit
findings of historical facts, as in this case, we review the evidence in the
light most favorable to the trial court=s ruling.  See Welch v. State, 93 S.W.3d 50, 53
(Tex. Crim. App. 2002).

                                                                 IV. 
Analysis

A.        Is the allegedly unlawful arrest of
appellant a material issue that is before this court?








Appellant
asserts the trial court erred in not suppressing the tangible evidence both
because it was obtained as a result of an unlawful warrantless arrest and
because it was obtained as a result of an unreasonable warrantless search and
seizure.  However, the record does not
show that the police officers seized the cocaine as a result of, or incident
to, any warrantless arrests made in this case. 
Although probable cause must be shown to support either a warrantless arrest
or a warrantless search and seizure, the two issues are legally distinct and
entail different considerations.  See
Porter v. State, 938 S.W.2d 725, 728 (Tex. App.CHouston [1st Dist.] 1996, pet. ref=d) (recognizing that State has burden
to prove existence of probable cause to justify a warrantless arrest or
search).  Appellant appears to contend
that the officers entered the premises at 1730 Saxon for the purpose of making
an arrest.  However, when it is viewed in
the light most favorable to the trial court=s ruling, the evidence presented at
the suppression hearing, for example, the officers= testimony, showed that the officers
entered the Saxon premises to prevent the destruction of evidence, that is, the
cocaine, not to effectuate an arrest.  See
Effler v. State, 115 S.W.3d 696, 699 (Tex. App.CEastland 2003, pet. ref=d) (differentiating between entry of
police officers to prevent destruction of evidence and entry for purpose of
making warrantless arrest).  Thus, the
police officers obtained the tangible evidence in question as the fruit of a
warrantless search and seizure, not a warrantless arrest.  As a result, the issue we have before us is
whether the officers had probable cause to conduct a warrantless search and
seizure of the tangible evidence, including the cocaine.

B.        Does
appellant have standing to challenge the allegedly unreasonable search and
seizure of the backyard of Mireles=s home? 









In his second issue, appellant asserts that he has
standing to challenge the alleged unreasonable warantless search of the Saxon
premises.  To show standing, appellant
had the burden of proving facts establishing a legitimate expectation of
privacy in the Saxon premises.  See
Granados v. State, 85 S.W.3d 217, 223 (Tex. Crim. App. 2002).  Appellant can satisfy this burden by
establishing that he had a subjective expectation of privacy in the Saxon
premises that society is prepared to recognize as objectively reasonable.  See id.  Several factors are relevant to determining
whether appellant=s claim of privacy is objectively reasonable: (1) whether
appellant had a property or possessory interest in the place invaded; (2)
whether he was legitimately in the place invaded; (3) whether he had complete
dominion or control and the right to exclude others; (4) whether, prior to the
intrusion, he took normal precautions customarily taken by those seeking
privacy; (5) whether he put the place to some private use;  and (6) whether his claim of privacy is consistent
with historical notions of privacy.  See
id.  This list of factors is not
exhaustive, however, and none is dispositive of a particular assertion of
privacy; rather, we examine the circumstances surrounding the search in their
totality.  See id. 








Sergeant
Rios and Officer Walker both testified that appellant told them he did not live
at 1730 Saxon.  No evidence in the record
contradicts this testimony.  In fact,
Jesse Rodriguez, the only witness called by appellant, testified that 1730
Saxon was the Mireles=s home and that appellant had helped Rodriguez in the past to
do construction work at this residence. 
Rodriguez also testified that appellant, by himself, had done other
construction jobs at Mireles=s home and that Rodriguez and appellant had access to  Mireles=s property with Mireles=s permission.  The record shows that appellant had no
property or possessory interest in the premises.  At most, Rodriguez=s testimony indicates that appellant
had done construction work at Mireles=s home in the past and that he might
have been doing construction work there on the day in question.  There is no evidence in the record that
appellant had any of the requisite ties to the premises at 1730 Saxon to
support a legitimate expectation of privacy. 
Specifically, there is nothing to suggest appellant: (1) had complete
dominion or control and the right to exclude others, (2) took normal
precautions customarily taken by those seeking privacy, and (3) put the place
to some private use.  Based on this
record, we find no indication that appellant=s claim of privacy is consistent with
historical notions of privacy.  After
examining the circumstances surrounding the search in their totality, we
conclude society is not prepared to recognize as objectively reasonable any
expectation of privacy in the premises alleged by appellant.  Therefore, the trial court did not err in
denying appellant=s motion to suppress.  See
Granados, 85 S.W.3d at 221B26 (holding that overnight guest lacked objectively
reasonable expectation of privacy under the facts of that case); Edwards v.
State, 850 S.W.2d 731, 735 (Tex. App.CEl Paso 1993, no pet.) (holding,
under the facts presented, defendant lacked standing to challenge alleged
unreasonable search of house in which he did not live).  Accordingly, we overrule appellant=s second issue.

C.        Was the warrantless search and seizure
reasonable?  

We can
affirm the trial court=s judgment based on lack of standing alone.  However, in the interest of justice, we
address appellant=s first issue challenging the search and seizure.  The Fourth Amendment of the United States
Constitution and article I, section 9 of the Texas Constitution forbid
unreasonable searches and seizures.  U.S. Const. amend. IV; Tex. Const. art. I, ' 9. 
When police officers enter a residence without the consent of its
residents, that entry constitutes a search. 
McNairy v. State, 835 S.W.2d 101, 106 (Tex. Crim. App.
1991).  Federal courts as well as Texas
state courts have held that a police search of a home without a warrant is
presumptively unreasonable.  Beaver v.
State, 106 S.W.3d 243, 246 (Tex. App.CHouston [1st Dist.] 2003, pet. ref=d). 
Here, the State concedes that the police officers did not have a search
warrant.

To
justify a warrantless search, the State must show the existence of probable
cause at the time the search was made, and the existence of exigent
circumstances, which made the procuring of a warrant impracticable.  McNairy, 835 S.W.2d at 106; Beaver,
106 S.W.3d at 247.  Exigent circumstances
justifying a warrantless entry include preventing the destruction of evidence
or contraband.  McNairy, 835
S.W.2d at 107.  Besides arguing that it
had the requisite probable cause, the State in this case argued and presented
evidence that exigent circumstances C that is, the probable destruction of
the cocaine evidence C made obtaining a search warrant impracticable at the time of
the search.








Appellant
asserts that there was no evidence of probable cause or exigent circumstances
in this case.  Probable cause to search
exists when reasonably trustworthy facts and circumstances within the knowledge
of the officer on the scene would lead a person of reasonable prudence to
believe that the instrumentality of a crime or evidence of a crime will be
found.  See McNairy, 835 S.W.2d at
106.  It exists when the facts are
sufficient to justify the conclusion that the property that is to be the object
of the search is probably in the area to be searched.  See Rojas v. State, 797 S.W.2d 41, 43
(Tex. Crim. App. 1990).  The
determination of probable cause at the time of the questioned event is viewed
from the Atotality of the circumstances.@  See Angulo v. State, 727 S.W.2d 276, 278
(Tex. Crim. App. 1987).

In this
case, Officers Green and Walker as well as Sergeant Rios testified at the
suppression hearing that probable cause to obtain a search warrant of the
premises at 1730 Saxon did not exist when they went to the location to conduct
surveillance.  In fact, the officers
testified that obtaining probable cause was the purpose of the
surveillance.  Our review of the record
indicates that the officers developed sufficient probable cause after setting
up the surveillance.

The
State presented evidence showing that Officers Green and Walker were told by
Angela Cochran and her male companion that they had obtained two kilograms of
cocaine at the Saxon premises from a young, chubby, Hispanic male named ATony.@ 
Officers Walker and Green testified that Cochran and her companion had
described ATony@ as having one eyebrow.  The officers also testified that the
informants had said that there was possibly additional cocaine on the premises
and that ATony@ would be waiting for them to return
to the location with payment for the two
kilograms of cocaine.








Texas
follows the Atotality of the circumstances@ approach in evaluating
informant-based probable cause.  Johnston v. State, 99 S.W.3d 269, 272
(Tex. App.CTexarkana 2003, no pet.).  Under the totality of the circumstances
approach, an informant=s veracity, reliability, and basis of knowledge are all
highly relevant in determining the value of a tip. Id.  These elements, however, are not entirely
separate and independent requirements to be rigidly exacted in every case.  Id. 
Rather, they are closely intertwined issues that may usefully illuminate
the common-sense, practical question of whether there is probable cause to
believe that contraband or evidence is located in a particular place.  Id. 
Though information supplied by confidential informants standing alone
cannot supply officers with sufficient probable cause, probable cause may arise
from information supplied by a confidential informant provided the information
is corroborated.  Id.  First, we note that the informants in this
case were not Aconfidential.@ 
Officers Green and Walker identified one of the informants (Angela
Cochran) at the suppression hearing.  The
officers could not remember the name of Cochran=s companion but said that his name
was readily available in the report filed in conjunction with the seizure of
the two kilograms of cocaine.

Moreover,
the State presented evidence showing the basis of the informants= knowledge and the reliability of the
tip.  Specifically, the informants= information regarding the presence
of cocaine at the Saxon premises was based on personal, first-hand knowledge,
not rumor or hearsay.  See Hackleman
v. State, 919 S.W.2d 440, 447 (Tex. App.CAustin 1996, pet. ref=d, untimely filed).  The informants had personally obtained the
two kilograms of cocaine found in their car from an individual on the premises.

Additionally,
the State presented evidence establishing the veracity and reliability of the
information supplied by the informants. 
Particularly, the State=s evidence showed that the surveillance conducted by the
officers corroborated the information supplied by Cochran and her
companion.  Officers Green and Walker
testified that, when they saw Mireles on the Saxon premises, he matched the
physical description given by the informants of the man from whom the two
informants had obtained the cocaine.  The
officers also testified that Mireles=s behavior was consistent with the
information that they had received from the informants C that the narcotics supplier at the
residence would be waiting for them to return with payment for the two
kilograms of cocaine.  Specifically, the
officers testified that Mireles was standing in front of the residence, talking
on a cell phone, and watching passing traffic.








Although
the informants only gave information to the
police after two kilograms of cocaine had been found in their car, the
informants= statements that they had obtained
the two kilograms at Mireles=s residence was a statement against their penal interests
that bolstered their veracity in establishing probable cause.  See Hackelman, 919 S.W.2d at 447; Lowery
v. State, 843 S.W.2d 136, 140 (Tex. App.CDallas 1992, pet. ref=d).

The
officers also testified that the persons on the Saxon premises appeared to
notice Officer Walker=s presence.  At that
point, the group started moving around more and were making an obvious effort
to observe Officer Walker.  Testimony was
presented that Mireles got in his car and drove around the block.  Another man from the residence drove past
Officer Walker and slowed down to look at the officer.

Officer
Walker observed Mireles hand appellant a box that appellant took to the
backyard of the premises.  When Sergeant
Rios entered the neighboring yard, he saw appellant running with the box in the
backyard of the premises.  Furtive
movements, and certainly flight, are strong indicia of mens rea.  See Smith v. State, 542 S.W.2d 420, 421
(Tex. Crim. App. 1976); Simpson v. State, 668 S.W.2d 915, 918 (Tex. App.CHouston [1st Dist.] 1984, no pet.)
(involving probable cause for making warrantless arrest when suspects fled after seeing police).  Thus, if a significant degree of suspicion
concerning a particular person already exists, the flight and furtive movement
of that person on the approach of police officers may be taken into account,
and may elevate the pre-existing suspicion to the requisite constitutional
level of probable cause.  See Smith,
542 S.W.2d at 421; Simpson, 668 S.W.2d at 918.








Considering the totality of the circumstances in this case,
we conclude that probable cause existed for the police officers to make a
warrantless entry onto the Saxon premises to seize the cocaine.  In addition to the detailed and corroborated
information supplied by the two informants, appellant, Mireles, and others on
the premises conducted counter-surveillance and made furtive movements when
they suspected police presence.  Once the
police made their presence known, Mireles picked up a box and then gave it to
appellant, who immediately ran into the backyard carrying the box.  Considered as a whole, these facts were
sufficient to supply the officers with the requisite probable cause to enter
the yard and seize the cocaine.  As to
the issue of exigent circumstances, we note that Sergeant Rios reasonably could
have believed that appellant was heading into the backyard to dispose of the
cocaine.  It follows that the officer was
faced with a real possibility that the cocaine could be immediately disposed of
before a warrant could be secured, and, thus, he was justified in seizing the
cocaine without a warrant.  See
McNairy, 835 S.W.2d at 107. 
Accordingly, even if appellant had standing to challenge this
warrantless search, it was justified under the circumstances because the
officers had probable cause at the time of the search and exigent circumstances
existed which made the procurement of a warrant impracticable.  See Mireles v. State, No.
01-03-00407-CR, 2004 WL 1172100, at *1B*5 (Tex. App.CHouston [1st Dist.] May 27, 2004,
pet. filed) (holding that trial court did not err in denying Mireles=s motion to suppress, which was heard
at the same time and based on the same evidence as appellant=s motion to suppress in this case)
(not designated for publication).

We hold that the trial court=s denial of appellant=s motion to suppress is supported by
the evidence in the record.  Accordingly,
we overrule appellant=s two issues and affirm the trial court=s judgment.

 

 

 

/s/        Kem Thompson Frost

Justice

 

Judgment rendered
and Memorandum Opinion filed August 31, 2004.

Panel consists of
Chief Justice Hedges and Justices Hudson and Frost.

Do Not Publish C Tex.
R. App. P. 47.2(b).