COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | § | |
|---|---|---|
| JUAN MUNOZ, | | No. 08-07-00304-CR |
| | § | |
| Appellant, | | Appeal from the |
| | § | |
| V. | | 210th District Court |
| | § | |
| THE STATE OF TEXAS, | | of El Paso County, Texas |
| | § | |
| Appellee. | | (TC# 20060D04737) |
| | § | |
| | § | |

**O P I N I O N**

Appellant was convicted by a jury of three counts of aggravated sexual assault, and

sentenced to 28 years confinement in the Institutional Division of the Texas Department of

Criminal Justice. On appeal, Appellant raises one issue arguing the trial court erred in denying

his motion to suppress the introduction of evidence discovered because of an illegal search and

involuntary statement. We affirm.

Lilia Esquinca testified that on July 2, 2006, she went to a cookout at her apartment

complex. There she met Juan Munoz, who also lived in the same apartment complex. She went

to bed about 11 p.m. She was awoken by the sound of her back door opening, and she saw a man

holding a knife and wearing a ski mask come into the apartment. The intruder straddled

Ms. Esquinca and held the knife to her neck. The masked figure attempted to rape her. He first

used his fingers, and then tried to penetrate her with his penis, but could not. Ms. Esquinca was

then forced to perform oral sex on the man. The man left after threatening her and her family if

anyone found out. She testified that she recognized his voice as that of Appellant. Afterwards, Ms. Esquinca looked for her cell phone, but could not find it, and ultimately called the police from a pay phone.

Detective Gonzalo Chavarria testified that when he arrived at the scene at 4:40 a.m., he spoke with the responding officers and briefly to the victim and defendant. Det. Chavarria asked Appellant if he would come to the Crimes Against Persons (CAP) office with him. Appellant said he would. Det. Chavarria said Appellant was not under arrest at that point, and he was free to leave if he wished. Appellant told Det. Chavarria that he did not have transportation, and Det. Chavarria arranged for Sergeant Nelms to take him. Appellant was not in handcuffs nor was he under arrest when he arrived at the CAP office. Det. Chavarria and Det. Nevarez *Mirandized* Appellant. At 6 a.m., Det. Chavarria started the interview. Det. Chavarria stated he read Appellant his rights from the *Miranda* card, and Appellant initialed each right and signed the card. Appellant never asked for a lawyer. Det. Chavarria stated Appellant was not coerced or forced to make the statement, and nothing was promised to him. Appellant agreed to give a videotaped statement. During the statement, Appellant admitted to having committed the offense. At that point, Det. Chavarria stated he would no longer have been free to go. A ski mask was recovered from the roof over Appellant's apartment as a result of the statement.

Det. Chavarria also testified he had a lengthy conversation with Appellant's father, and in his opinion, Mr. Munoz, Sr. fully understood what the consent to search the apartment was. Appellant's father told him that the apartment was leased under his name. Det. Chavarria testified that he believed that the responding officers had seen cell a phone but had not collect it before getting the consent forms signed. Det. Chavarria also stated that an officer had told him

they had called the number of the victim's cell phone, and the phone they had seen in Appellant's bedroom had rung.

Det. Yvette Nevarez testified she was called out to assist with an aggravated sexual assault. She met with Appellant at the CAP office. Det. Nevarez stated that she *Mirandized* him prior to speaking to him when he asked about what was going on. Det. Nevarez read him the rights from the card, and Appellant acknowledged that he understood those rights. Appellant did not ask for an attorney. Appellant was not under arrest, was not put in a holding cell, and did not appear intoxicated. Soon after Det. Chavarria arrived, Appellant was moved to an interview room.

Sergeant Clint Nelms testified that on July 3, 2006, he responded to a call regarding a sexual assault. Sgt. Nelms met with Ms. Esquinca and Appellant that night. Sgt. Nelms signed the consent forms along with Appellant, and the forms were witnessed by Officer Torres. A consent form was signed by Appellant's father as well. Officer Torres and some of the other officers asked Appellant and his father if they could search the residence, and they said yes. Sgt. Nelms did admit that officers had an idea where the victim's cell phone was before the consent forms were signed.

Appellant testified at the hearing that his father woke him up because police officers wanted to speak to him. The officers were already inside. There were three in the living room and two in the bedroom. Appellant was only wearing boxers, and the officers watched him get dressed. The officers told him they needed him to step out and talk to them. Appellant was told to stand outside and wait for the detectives to come. He waited in front of the building. Appellant said he was handcuffed briefly, but they were removed when another officer came out

and spoke with the officer that had handcuffed him. Appellant had not been advised of any *Miranda* rights, was not told he was free to leave, and was not told he was under arrest. Appellant believed that if he tried to leave, the officers would not let him. When the officers came out of the apartment, he thought he saw one with a cell phone in his hand, and then he was told they were going to bring some papers to sign, so they could search the apartment. Appellant did sign the papers and understood what they were. Appellant testified that he drank about a thirty-pack earlier in the day, and had almost no sleep prior to being woken by his father because he had been up since the night before. Appellant stated that he was intoxicated and tired. When they arrived to the police station, he sat there for a while and was offered water by a police officer.

The trial court issued findings of fact and conclusions of law regarding the motion to suppress. The trial court found that the cell phone was discovered prior to Det. Chavarria arriving at the scene, and it had already been recovered. The trial court found at the time Appellant gave his statement, there was more than sufficient probable cause to arrest. The trial court found that the officers conducted a search of Appellant's residence without a warrant and without a consent to search being signed. The statement given by Appellant was a custodial interrogation. Appellant was provided the proper *Miranda* warnings, and he knowingly and intelligently waived those rights. Appellant understood the warnings, was not intoxicated nor hampered by lack of sleep, he was not coerced, threatened, or forced, and he never asked for an attorney during the giving of the statement or to end the interview. The trial court suppressed the cell phone, and had any mention of it in the statement removed from the videotape. The trial court found that any impropriety before the taking of the cell was attenuated by the fact that

-4-

Appellant voluntarily went to police headquarters.

Appellant argues the trial court erred in denying his motion to suppress because the taint from the illegal arrest and search was not sufficiently attenuated to allow the introduction of the evidence discovered as a result of Appellant's statement, and the statement was not freely and voluntarily given.

We review a trial court's ruling on a motion to suppress using the bifurcated standard of review articulated in *Guzman v. State*, 955 S.W.2d 85 (Tex.Crim.App. 1997). *Krug v. State*, 86 S.W.3d 764, 765 (Tex.App.--El Paso 2002, pet. ref'd). Because the trial judge is the sole trier of fact regarding credibility and weight to be given to a witness testimony, we do not engage in our own factual review of the trial court's decision. *See State v. Ross*, 32 S.W.3d 853, 855 (Tex.Crim.App. 2000). Almost total deference is given to the trial court's ruling on questions of historical fact and application of law to fact questions that turn on an evaluation of credibility and demeanor. *Montanez v. State*, 195 S.W.3d 101, 106 (Tex.Crim.App. 2006), *citing Guzman*, 955 S.W.2d at 89. A trial court's rulings on mixed questions of law and fact that do not turn on the credibility and demeanor of witness are reviewed *de novo*. *Id*.

Where as here, the trial court files findings of fact and conclusions of law, the court's finding will not be disturbed on appeal absent an abuse of discretion. *State v. Wood*, 828 S.W.2d 471, 474 (Tex.App.--El Paso 1992, no pet.). If the court's finding are supported by the record, then we are not at liberty to disturb them, and we will only address the question of whether the trial court improperly applied the law to the facts. *Wood*, 828 S.W.2d at 474. A court's ruling regarding a motion to suppress will be upheld if the decision made was based on any correct theory of law applicable to the case. *Ross*, 32 S.W.3d at 856.

When relying upon consent to justify the lawfulness of a search, the State has the burden to prove by clear and convincing evidence that the consent was freely and voluntarily given. *Bumper v. North Caorlina*, 391 U.S. 543, 548, 88 S.Ct. 1788, 1792, 20 L.Ed.2d 797 (1968). The burden requires the State to show that the consent was positive and unequivocal, and there was no duress or coercion. *Meeks v. State*, 692 S.W.2d 504, 509 (Tex.Crim.App. 1985). The burden cannot be discharged by showing no more than acquiescence to a claim of lawful authority. *See Bumper*, 391 U.S. at 549-50, 88 S.Ct. at 1792.

Appellant argues that he was illegally arrested at the time he gave consent to the search. The trial court found that the officer had more than sufficient probable cause to arrest the defendant at the time he gave his statement, and he was in custody. However, Appellant and his father both signed consent to search forms. The consent to search was valid because his father could agree to the search. *See Figueroa v. State*, 250 S.W.3d 490, 511 (Tex.App.--Austin 2008, pet. ref'd)(where appellant alleged he was illegally arrested, Court upheld consensual search of apartment, finding the legality of the search was dependant on third-party's consent, not appellant's).

Appellant next argues that his recorded statement was not free of the taint from the illegal search. In assessing whether the taint on evidence is sufficiently attenuated, we consider whether: (1) *Miranda* warnings were given; (2) the temporal proximity of the arrest and the confession; (3) the presence of intervening circumstances; and (4) the purpose and flagrancy of the official misconduct. *Brown v. Illinois*, 422 U.S. 590, 603-04, 95 S.Ct. 2254, 2261-62, 45 L.Ed.2d 416 (1975).

Appellant was given *Miranda* warnings by both Det. Nevarez and Det. Chavarria.

-6-

Appellant made his statement a relatively short time after the search of his apartment occurred. Appellant consented to a search of his apartment after the initial search. Appellant voluntarily went to the police department to speak with the detectives. Courts typically do not deem police misconduct as "flagrant" unless the police engaged in the conduct for the purpose of obtaining consent or to cause surprise or fear. *Beaver v. State*, 106 S.W.3d 243, 250 (Tex.App.--Houston [1st Dist.] 2003, pet. ref'd). The record does not show that the purpose of the search was to induce Appellant into confessing or obtaining consent to search nor does it show an intent to cause surprise or fear. The officers testified that Appellant was not handcuffed, threatened, or coerced. We agree with the trial court that the taint from illegal seizure of the cell phone was sufficiently attenuated from Appellant's recorded statement and the evidence recovered as a result of that statement. The trial court did not abuse its discretion in only partially granting the motion to suppress. Issue One is overruled.

The trial court certified that Appellant had a right to appeal but the certification does not contain the defendant's signature indicating that he was informed of his rights to appeal and file a *pro se* petition for discretionary review. The certification is defective but it has not been corrected by the trial court or Appellant's attorney. In order to remedy this defect, we ORDER Appellant's attorney, pursuant to TEX.R.APP.P. 48.4, to send Appellant a copy of our opinion and judgment, notify Appellant of his right to file a *pro se* petition for discretionary review, and inform Appellant of the pertinent deadlines. *See* TEX.R.APP.P. 48.4, 68. Appellant's attorney is further ORDERED to comply with all of the requirements of Rule 48.4.

Having overruled Appellant's sole issue, we affirm Appellant's conviction.

February 17, 2010

DAVID WELLINGTON CHEW, Chief Justice

Before Chew, C.J., McClure, and Rivera, JJ.

(Do Not Publish)