02-10-157 & 158-CR









 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

     NOS.  02-10-00157-CR

      02-10-00158-CR

 

 


 
 
 Renee Cecile Black
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE
 
 


 

 

----------

 

FROM THE 213th
District Court OF Tarrant COUNTY

----------

 

MEMORANDUM
OPINION[1]

----------

 

I.  Introduction

 

          Appellant
Renee Cecile Black appeals following her convictions in two cases for separate
incidents of possession of more than four but less than 200 grams of
methamphetamine.  The trial court placed Appellant on deferred adjudication in
the first case on November 19, 2008.  She was indicted again on May 11, 2009,
with a new offense of intentionally or knowingly possessing methamphetamine on
April 15, 2009, and the State filed a petition to proceed to adjudication on the
first case.  After the trial court denied her motion to suppress, Appellant
pleaded true to the first offense and guilty to the new offense, and the trial
court proceeded to adjudication and sentenced her to fifteen years’ confinement
in each case with the sentences to run concurrently.  Appellant contends in two
points on appeal that the trial court abused its discretion by denying her
motion to suppress because her consent to a search of her home that resulted in
the police finding methamphetamine in the desk drawer of her residence in 2009 was
coerced and not freely and voluntarily given.  We affirm.

II. 
Background

Detective
Pat Blauser of the Fort Worth Police Department testified at the suppression
hearing that he assisted in an investigation concerning stolen property at
Appellant’s residence on April 15, 2009.  Detective Blauser and his partner,
Detective Mapes, arrived at Appellant’s residence in an unmarked vehicle and in
plain clothes.  They posed as buyers interested in purchasing some items that
Appellant had listed for sale on Craigslist.  A burglary victim had previously
identified the items listed on Craigslist as being stolen from his property. 
The stolen property included, among other items, a toolbox, assorted tools, a
generator, a Honda motorcycle, tie-down straps, and household appliance fans.

          Upon
arrival at Appellant’s residence, the officers engaged in conversation with her
regarding purchasing items that were sitting in Appellant’s front yard.  Within
approximately ten minutes of arriving at Appellant’s residence, the detectives
had confirmed their suspicions that the property in her yard was the property
that had been reported stolen, and they informed Appellant that they were
detectives and that the items she was selling were stolen.  Detective Blauser
testified that Appellant’s residence had “a junk-yard appearance” in that it
housed various items that were sorted and stored in different areas.  Appellant
told the detectives that her business was to sell items on eBay.  Appellant
testified at the suppression hearing and denied knowing that any of the items
were stolen before the detectives informed her of that fact.

          The
detectives asked Appellant if she would sign a consent to search form so that
they could check the property for any additional stolen items.  Detective
Blauser testified that they wished to check the home and property for other
stolen items or evidence—such as business records or receipts—that would prove
that Appellant was running a fencing operation.  They also were not certain
that they had recovered all of the stolen items.  Appellant testified that when
the detectives asked to search her house, she assumed they were looking for
large items like the Honda motorcycle and the other items that they had just
identified as stolen.

          When
the detectives asked for her consent, they twice told Appellant that she was
free to consult with an attorney before signing the consent to search form. 
Appellant testified that she had left her cell phone inside the house and that
she did not read the consent form because her glasses were also inside the
house.  But Detective Blauser testified that, prior to signing, Appellant read
and reviewed the form, which states that the consenting party voluntarily
waives and surrenders any rights and gives permission to search.  Appellant
testified that she did not believe that she had the right to withhold consent
because a condition of her probation for possession of methamphetamine required
her to consent to searches of her residence by a peace officer without a warrant. 
But Appellant also testified that from before the time she signed the consent
to search form through the time of the search itself, the detectives were
polite and did not handcuff or arrest her.  She also said that she was comfortable
and was allowed to walk around the property as the officers searched. 
Appellant further testified that she did understand that the officers were
going to look around and that, although she did not understand that they would
look through the papers in her desk drawer, she did not withdraw her consent
when Detective Blauser began searching her desk.

          After
Appellant signed the consent to search form, the detectives began their search
with a sweep of Appellant’s residence, including a search of her desk and
computer, which appeared to be the center of operations for her eBay business. 
Inside one of the desk drawers, Detective Blauser found a metal box,
approximately twelve-by-twelve inches.  When he looked inside the box, he found
two baggies of a substance later identified as methamphetamine, bags that are
typically used for the distribution of illegal narcotics, and a scale. 
Appellant was standing in the room and watched as Detective Blauser searched
the desk.

III.  Applicable Law

 

A.  Standard of Review

 

          We
review a trial court’s ruling on a motion to suppress evidence under a
bifurcated standard of review.  Amador v. State, 221 S.W.3d 666, 673
(Tex. Crim. App. 2007); Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim.
App. 1997).  In reviewing the trial court’s decision, we do not engage in our
own factual review.  Romero v. State, 800 S.W.2d 539, 543 (Tex. Crim.
App. 1990); Best v. State, 118 S.W.3d 857, 861 (Tex. App.—Fort Worth
2003, no pet.).  The trial judge is the sole trier of fact and judge of the
credibility of the witnesses and the weight to be given their testimony.  Wiede
v. State, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007); State v. Ross,
32 S.W.3d 853, 855 (Tex. Crim. App. 2000), modified on other grounds by
State v. Cullen, 195 S.W.3d 696 (Tex. Crim. App. 2006).  Therefore, we give
almost total deference to the trial court’s rulings on (1) questions of
historical fact, even if the trial court’s determination of those facts was not
based on an evaluation of credibility and demeanor, and (2) application-of-law-to-fact
questions that turn on an evaluation of credibility and demeanor.  Amador,
221 S.W.3d at 673; Montanez v. State, 195 S.W.3d 101, 108–09 (Tex. Crim.
App. 2006); Johnson v. State, 68 S.W.3d 644, 652–53 (Tex. Crim. App.
2002).  But when application-of-law-to-fact questions do not turn on the
credibility and demeanor of the witnesses, we review the trial court’s rulings
on those questions de novo.  Amador, 221 S.W.3d at 673; Estrada
v. State, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); Johnson, 68
S.W.3d at 652–53.

          Stated
another way, when reviewing the trial court’s ruling on a motion to suppress,
we must view the evidence in the light most favorable to the trial court’s
ruling.  Wiede, 214 S.W.3d at 24; State v. Kelly, 204 S.W.3d 808,
818 (Tex. Crim. App. 2006).  When the trial court makes explicit fact findings,
we determine whether the evidence, when viewed in the light most favorable to
the trial court’s ruling, supports those fact findings.  Kelly, 204
S.W.3d at 818–19.  We then review the trial court’s legal ruling de novo
unless its explicit fact findings that are supported by the record are also
dispositive of the legal ruling.  Id. at 818.

          When
the record is silent on the reasons for the trial court’s ruling, or when there
are no explicit fact findings and neither party timely requested findings and
conclusions from the trial court, we imply the necessary fact findings that
would support the trial court’s ruling if the evidence, viewed in the light
most favorable to the trial court’s ruling, supports those findings.  State
v. Garcia-Cantu, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008); see Wiede,
214 S.W.3d at 25.  We then review the trial court’s legal ruling de novo
unless the implied fact findings supported by the record are also dispositive
of the legal ruling.  Kelly, 204 S.W.3d at 819.

          We
must uphold the trial court’s ruling if it is supported by the record and
correct under any theory of law applicable to the case even if the trial court
gave the wrong reason for its ruling.  State v. Stevens, 235 S.W.3d 736,
740 (Tex. Crim. App. 2007); Armendariz v. State, 123 S.W.3d 401, 404
(Tex. Crim. App. 2003), cert. denied, 541 U.S. 974 (2004). 

B.  Consent
to Search

          The
Fourth Amendment protects against unreasonable searches and seizures by
government officials.  U.S. Const. amend. IV; Wiede, 214 S.W.3d at 24. 
To suppress evidence because of an alleged Fourth Amendment violation, the
defendant bears the initial burden of producing evidence that rebuts the
presumption of proper police conduct.  Amador, 221 S.W.3d at 672; see
Young v. State, 283 S.W.3d 854, 872 (Tex. Crim. App. 2009).  A defendant
satisfies this burden by establishing that a search or seizure occurred without
a warrant.  Amador, 221 S.W.3d at 672.  Once the defendant has made this
showing, the burden of proof shifts to the State, which is then required to
establish that the search or seizure was conducted pursuant to a warrant or was
reasonable.  Id. at 672–73; Torres v. State, 182 S.W.3d 899, 902
(Tex. Crim. App. 2005); Ford v. State, 158 S.W.3d 488, 492 (Tex. Crim.
App. 2005).

          Whether
a search is reasonable is a question of law that we review de novo.  Kothe
v. State, 152 S.W.3d 54, 62 (Tex. Crim. App. 2004).  Reasonableness is
measured by examining the totality of the circumstances.  Id. at 63.  It
requires a balancing of the public interest and the individual’s right to be
free from arbitrary detentions and intrusions.  Id.  A search conducted
without a warrant is per se unreasonable unless it falls within one of the
“specifically defined and well-established” exceptions to the warrant
requirement.  McGee v. State, 105 S.W.3d 609, 615 (Tex. Crim. App.), cert.
denied, 541 U.S. 1004 (2003); see Best, 118 S.W.3d at 862.  One of
these exceptions is searches conducted pursuant to the suspect’s voluntary
consent.  McGee, 105 S.W.3d at 615.  Where consent to search has been
validly obtained, neither probable cause nor exigent circumstances are required
to justify a warrantless search.  State v. Bagby, 119 S.W.3d 446, 450 (Tex.
App.—Tyler 2003, no pet.).

          For
a consent to search to be valid, the consent must have been voluntarily given
and not be the result of duress or coercion, either express or implied.  Reasor
v. State, 12 S.W.3d 813, 817–18 (Tex. Crim. App. 2000).  Whether consent
was voluntarily given is a question of fact to be determined from the totality
of the circumstances surrounding the consent.  Maxwell v. State, 73
S.W.3d 278, 281 (Tex. Crim. App.), cert. denied, 537 U.S. 1051 (2002); Reasor,
12 S.W.3d at 818.  The State bears the burden of proving that such consent was
voluntary.  Rayford v. State, 125 S.W.3d 521, 528 (Tex. Crim. App.
2003), cert. denied, 543 U.S. 823 (2004).  The United States
Constitution requires the State to prove the validity of the consent by a
preponderance of the evidence; the Texas constitution requires proof by clear
and convincing evidence.  Id.; Maxwell, 71 S.W.3d at 281.

          Factors
courts consider in determining voluntariness include the age, education, and
intelligence of the individual; the constitutional advice given to the
individual; the repetitiveness of the questioning; and whether physical
punishment was used.  Reasor, 12 S.W.3d at 818.  Testimony by law
enforcement officers that no coercion was involved in obtaining the consent is
also evidence of the consent’s voluntary nature.  Martinez v. State, 17
S.W.3d 677, 683 (Tex. Crim. App. 2000).  Although a police officer’s failure to
inform an individual that he can refuse consent is a factor to consider, the
absence of such information does not automatically render the consent
involuntary.  United States v. Galberth, 846 F.2d 983, 988 (5th Cir.
1988); Johnson, 68 S.W.3d at 653.  Texas courts have decided numerous
cases where the suspect’s consent was deemed voluntary when the officers were
in plain clothes and identified themselves as officers before requesting
consent to search.  See State v. Velasquez, 994 S.W.2d 676, 677–79 (Tex.
Crim. App. 1999); Hunter v. State, 955 S.W.2d 102, 104–06 (Tex. Crim.
App. 1997); Hall v. State, 828 S.W.2d 224, 225–26 (Tex. App.―Fort
Worth 1992, no pet.).

          The
standard for measuring the scope of an individual’s consent is that of
objective reasonableness―what would the typical reasonable person have
understood by the exchange between the officer and the individual?  Florida
v. Jimeno, 500 U.S. 248, 251, 111 S. Ct. 1801, 1803–04 (1991); United
States v. Mendoza-Gonzalez, 318 F.3d 663, 667 (5th Cir.), cert. denied,
538 U.S. 1049 (2003).  The question is not to be determined on the basis of the
subjective intentions of the consenting party or the subjective interpretation
of the searching officer.  Mendoza-Gonzalez, 318 F.3d at 667.  Rather,
the scope of a search is typically “defined by its expressed object.”  Jimeno,
500 U.S. at  251, 111 S. Ct. at 1804.  While an individual may specifically
limit the scope of a search or revoke his consent, explicit authorization to
search a particular container is not required if the expressed object of
consent would lead a reasonable person to understand that consent extends to
that container.  Id. at 252, 111 S. Ct. at 1804; Valtierra v. State,
310 S.W.3d 442, 450 (Tex. Crim. App. 2010).  An individual’s silence in the
face of an officer’s further action may imply consent to that action.  Valtierra,
310 S.W.3d at 449. 

IV. 
Discussion

          In
her two points, Appellant argues that the trial court abused its discretion by
denying her motion to suppress because her consent to search was not
voluntarily given and that the search therefore violated the Fourth and
Fourteenth Amendments of the United States Constitution; article I, section 9
of the Texas constitution; and article 38.23 of the Texas Code of Criminal
Procedure.

          In
Sanchez v. State, the court found that the consent to search form signed
by Sanchez was valid.  No. 01-02-01068-CR, 2003 WL 22511493, at *3 (Tex.
App.—Houston [1st Dist.] Nov. 6, 2003, no pet.) (mem. op., not designated for
publication).  In that case, Sanchez’s father was on community supervision for
aggravated sexual assault of a child, and he was living with Sanchez.  Id.
at *1.  Sanchez arrived home to find police officers in his residence with his
father.  Id.  Officers asked Sanchez for written permission to search
his home, as they believed his father was in possession of child pornography.  Id. 
Sanchez agreed and signed the consent to search form.  Id.  The officers
proceeded to search the entire house for child pornography and found a canister
of marijuana in a bag next to Sanchez’s bed, cocaine in plain view on his
dresser, and a clear plastic bag containing cocaine residue inside a vase in
Sanchez’s room.  Id.  The court found that Sanchez voluntarily signed
the consent to search form because (1) there was nothing in the record to
suggest that the officers threatened or intimidated Sanchez, (2) Sanchez was
never handcuffed, (3) none of the officers pulled their weapons, (4) the
express language of the consent form notified Sanchez of his right to refuse
consent, (5) Sanchez had a twelfth-grade education and could read and write,
and (6) Sanchez signed the consent form.  Id. at *2–3.  The court
further determined that the consent to search form was of sufficient scope to
allow officers to search containers in Sanchez’s bedroom because the form
covered the entire house and the officers were looking for any kind of
pornographic material, which could include photographic negatives.  Id.
at *3.  Thus, it was reasonable for officers to search any container in
Sanchez’s bedroom that could have contained such negatives.  Id. 
Further, Sanchez followed the officers during their search and did not indicate
at any time that he wanted the search to stop.  Id.

          This
case is similar to Sanchez.  Viewing the record in the light most
favorable to the trial court’s decision, it was objectively reasonable, based
on the totality of the circumstances, to believe that Appellant voluntarily
consented to the search of her residence.  While Appellant did not ultimately
contact an attorney, the detectives twice told her that she was free to do so. 
Appellant testified that she did not read the consent form because she did not
have her glasses, but Detective Blauser testified that Appellant did read the
form.  Further, the record indicates that there was no reason that she could
not have retrieved her glasses or asked one of the detectives to read the form
to her.  In fact, Appellant testified that she was free to walk around, and the
detectives were polite to her and did not handcuff or arrest her prior to the
search of her house. The detectives identified themselves as police officers
prior to their request for permission to search and asked permission to search
her home.  Appellant voiced no objection to the search, she signed the consent
to search form, and the detectives did not place Appellant under any physical
or emotional duress.  Because the detectives were not required to inform
Appellant of her right to refuse consent and the trial court is free to
determine the credibility of witnesses, the trial court did not err by finding under
either the federal or Texas evidentiary standards that Appellant’s consent was
voluntary.  See Johnson, 68 S.W.3d at 653; Sanchez, 2003 WL
22511493, at *3.

          Moreover,
it was reasonable for the trial court to determine that the consent to search
extended to the box inside the desk drawer in Appellant’s home.  The police
report indicates that the detectives requested consent to check the property
for any additional stolen items.  Appellant told police that her business was
to sell items on eBay and that the items the detectives identified as stolen
were to be sold on eBay as well.  Detective Blauser testified that the
detectives were seeking additional stolen items and evidence that Appellant ran
a business fencing stolen items.  The consent form itself advised Appellant of
her right to refuse consent and stated that the consent included the removal of
objects and documents that the officers reasonably believed were evidence to be
used in a subsequent criminal proceeding.  Moreover, Appellant did not revoke
her consent or limit the scope of the search when she saw that Detective
Blauser was searching her desk.  Thus, it was objectively reasonable for the
detectives to believe that the consent to search extended to the cash box
inside of the desk drawer in Appellant’s house.  See Sanchez, 2003
WL 22511493, at *3.  Deferring, as we must, to the trial court’s credibility
determinations and viewing the record in the light most favorable to the trial
court’s decision to deny Appellant’s motion to suppress, we hold that the trial
court did not err by concluding that Appellant’s consent to search was freely
and voluntarily given and that the State met its burden of establishing the
voluntariness of Appellant’s consent under both the federal and Texas
evidentiary standards.  Kelly, 204 S.W.3d at 818; Maxwell, 73
S.W.3d at 281.  We overrule each of Appellant’s two points.

V. 
Conclusion

          Having
overruled both of Appellant’s points, we affirm the trial court’s judgments.

 

ANNE GARDNER

JUSTICE

 

PANEL:  GARDNER, MEIER, and GABRIEL, JJ.

 

DO NOT PUBLISH

Tex. R. App.
P. 47.2(b)

 

DELIVERED:
 August 18, 2011









[1]See Tex. R. App. P. 47.4.